## STATE *v.* WARD PROUTY.

May Term, 1920.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinon filed October 5, 1920.

*Discretion in Denying Continuance not Reviewable—Contradiction of Collateral Matter Brought Out in Cross-examination —Immaterial Evidence—Amendment of Information by Alleging Additional Means—Amendment to Information not Objectionable Because It Might Involve Injunction Issued in Another Case—Error Rendered Immaterial by Verdict—Formal Arraignment of Respondent May Be Waived Under Federal Constitution—Power of State Over Its Criminal Procedure—State Constitution Construed in Light of Existing Common Law—Common-law Criminal Procedure not Affected by Chapter 1, Article 10 of State Constitution—G. L. 2552 Relates to High Crimes—Respondent May Waive Formal Arraignment in Prosecution of Misdemeanor.*

1.  The court's action in overruling the respondent's motion for a continuance because of the possible prejudice of the jurymen, being a matter of discretion, was final, and not reviewable.
2.  Collateral matter brought out by a party on cross-examination of a witness cannot be contradicted by him.
3.  Where a breach of the peace with which the respondent was charged was wholly committed while he was in a certain house, what occasioned him to go to the house was immaterial.
4.  An amendment, that the respondent then and there intentionally and forcibly laid hands upon one B. without her consent, to an information charging a breach of the peace by the respondent by striking and beating said B., made during the trial to conform to testimony by the respondent, served only to insert another mode of breaking and disturbing the public peace at the same time, and did not set out an additional offence.
5.  Such amendment was not objectionable because it might bring up the matter of an injunction issued in another case restraining

the respondent from interfering with his wife's possession or control of the house in which the breach of the peace charged took place, because such injunction could be brought into the case only as it might be legitimate evidence on some question involved therein.

6. A judgment will not be reversed for an error which is rendered immaterial by the verdict.

7. A formal arraignment of, and plea by, a respondent before beginning trial is not necessarily required by the due process clause of the Fourteenth Amendment of the Federal Constitution, and is waived by his proceeding to trial without making objection on that ground.

8. *State* v. *Drown*, 85 Vt. 233, overruled in part.

9. The State has full power over the procedure in its courts, subject only to the qualification that such procedure must not work a denial of fundamental rights or conflict with the Federal Constitution.

10. The State Constitution should be construed in the light of the existing common-law, which is to be continued in force under such limitations and restrictions as that instrument imposes.

11. Chapter I, Article 10, of the State Constitution, left the rules of the common-law system of criminal procedure in force and to be administered, unless changed by statute, including the distinctions, obtaining or permissible, between prosecutions for felonies and prosecution for misdemeanors.

12. G. L. 2552, requiring arraignment and plea before trial, relates to the prosecution of high crimes and misdemeanors, and not to the prosecution of inferior crimes and misdemeanors.

13. A respondent charged with committing a breach of the peace may waive formal arraignment and plea before trial, and did waive it where he made no objection before the jury was impaneled, and thereafter expressly waived the reading of the information and entered a plea of not guilty.

INFORMATION for a breach of the peace. Plea, not guilty. Trial by jury at the September Term, 1919, Orleans County, *Moulton*, J., presiding. Verdict, guilty. Judgment on the verdict. The respondent excepted. The opinion states the case.

*E. A. Cook, A. W. Farman,* and *Ward Prouty* for the respondent.

*Frank D. Thompson,* State's Attorney, for the State.

WATSON, C. J.    The information, as originally filed, charged the respondent with breach of the peace at Newport, on the day named, by his tumultuous and offensive carriage by then and their swearing at, striking and beating Ida Blair, contrary, etc. Ida Blair is the mother of respondent's wife, also of Charles Blair mentioned below.    The record shows that immediately preceding the trial of this case, the case of *State* v. *Charles Blair* was tried by jury, resulting in a verdict of guilty.    In that case Blair was charged with breach of the peace by assaulting the respondent in the present case.    During the trial of the Blair case the jurymen, not on that panel, were not excluded from the court room, and as many as desired heard the evidence.    Blair testified, as did Prouty, the present respondent.    In that case the evidence on the part of the State tended to show that on the day alleged therein, Blair entered Prouty's office in Newport City and made an unwarranted assault upon him.    The defence was that Blair acted in self-defence.    The latter testified that he entered the office, stating that he had just heard that Prouty had struck Blair's mother several blows, and asking if it was true; that Prouty said it was true, and "furthermore if she comes into my house again she will get what you are going to get now," etc. —the affray then taking place.

[1]    The respondent in the present case moved for a continuance, because of the facts that appeared in the trial of the Blair case, and the presence of practically all of the jurymen in attendance at the term, during that trial, hearing the respondent therein testify; and for the reason of the prejudice shown by the affidavit filed in connection with this matter.    The affidavit referred to was made by one of the jurymen at the term, and was to the effect that he heard a conversation between two other jurymen, giving their names, in which one stated to the other that "if Ward Prouty should die it would make no more impression to the City of Newport than to put your finger in the Atlantic Ocean and take it out."

In overruling the motion, the court stated that it did so as a matter of discretion, allowing respondent whatever rights he had by way of exception.    There was nothing about the action of the court in disposing of the motion, taking it out of the

general rule that, being discretionary, it was final and unrevisable.

The State's evidence tended to show that at the time in question the respondent and his wife were living apart, she with her baby was living in their house in Newport; that Mrs. Blair was there, having been sent for to help her daughter, Mrs. Prouty, with her sick baby; that on that day the respondent came into the house, uninvited, and asked his wife if her mother was there, and being told that she was, he said he would give her so many minutes to get out; that Mrs. Blair was then up stairs with the baby; that the respondent went up where she was, commenced calling her vile names and using abusive language to her, and struck her three times on the side of her head with his open hand; that Mrs. Prouty, hearing her mother scream, went up where she was, and the respondent then soon went down.

In defence, the respondent, testifying in his own behalf, stated that on that occasion he went into his own house, where his wife and child and his mother-in-law, Mrs. Blair, were; that he went upstairs into the bedroom where Mrs. Blair was and told her to leave; that she refused to go, and he took her by the arm, but did not strike her. In cross-examination he stated that he laid hands on her for the purpose of forcing her to leave the house—took hold of her arm; that she resisted and struggled and screamed. Mrs. Blair, who was called as a witness by the State, testified that the respondent did not on that occasion take hold of her arm, nor did he take hold of any part of her body.

[2, 3] In cross-examining Mrs. Prouty, the wife of respondent and a witness for the State, the respondent's attorney brought out the fact that on the morning in question, while respondent was in the house and before he went up where Mrs. Blair was, he told the witness he did not want her to sell a certain stove they had, saying if she needed money she could have it; that she told him she had not disposed of the stove, and did not expect any money from him that morning; that she was then entitled to certain payments of alimony, but none was then due. The subject-matter of this examination was not touched upon in her examination in chief. The respondent offered to show in defence that on the day before this affair with his mother-in-law, there was an attempt to remove the stove from the house, and that occasioned him to go there the next morning, as he did. This evidence was further offered as bearing on the

truthfulness of the State's witness. To its exclusion an exception was saved. The matter pertaining to the stove was wholly collateral and, being brought out by the respondent, could not be contradicted by him. *Gregg* v. *Willis,* 71 Vt. 313, 45 Atl. 229. What occasioned the respondent to go there the next morning was immaterial. The offence with which he is charged was wholly committed while he was there and in the house.

[4, 5] The respondent having testified that he did not strike Mrs. Blair, but did lay his hands on her for the purpose of forcing her to leave the house, etc., the State, on motion and subject to such exception as respondent was entitled to, was permitted to amend the information by inserting immediately after the words "striking and beating Ida Blair," the following: "and by then and there assaulting the said Ida Blair by then and there intentionally and forcibly laying his hands upon the said Ida Blair without her consent." This amendment served only to insert another mode of breaking and disturbing the public peace. After the amendment, as before, all of the acts alleged were connected, done at the same time, and constitute but one offence, namely, a breach of the public peace. *State* v. *Matthews,* 42 Vt. 542. The amendment was based solely on the testimony given by the respondent as to what he did to Mrs. Blair at the time and place in question, and was to make the modes of the breach of the public peace charged, sufficiently varied to include that which his testimony tended to show. Objection thereto was made on the ground that it would be unfair to permit the amendment, because respondent would have to put another case at issue, as it would bring up the matter of the injunction then restraining him from interfering with his wife's possession or control of the house in which the breach of the peace charged took place. The objection was without merit, for the injunction could be brought into this case only as it might be legitimate evidence on some question involved therein. If it be such evidence, then the fact that it was issued in some other case could constitute no valid objection to its use.

Respondent then demurred to the amended information, on the ground that it sets out no additional offence; also asked that the amendment be stricken for the same reason. Exception was saved to the overruling severally of the demurrer and the motion to strike. What we have said respecting the allowance of the

amendment sufficiently shows that the exception last mentioned is without force.

Later the State offered in evidence the petition, injunction, and order of service, in divorce proceedings brought by the wife of the respondent, as libellant, against the respondent, as libellee, and pending at the time the alleged breach of the peace took place. The evidentiary force claimed from this evidence arises from the injunction. Objection was made on the grounds: (1) That the order of injunction when granted was beyond the power of a superior judge to make, and (2) that the injunction had no material bearing on any issue in the case being tried. The evidence was admitted and exception saved.

[6] But we need not consider this exception; for the court ruled that the evidence had a bearing only on the question of the respondent's right to eject Mrs. Blair from the house, and that that question arose only in connection with the assault alleged by the phrase inserted in the information by the amendment; that it had no bearing on the question whether a breach of the public peace was committed by the respondent by striking Mrs. Blair. No exception was taken to this ruling, so it stands before us as the law of the case. At the request of respondent the court submitted a special verdict to the jury to be answered in case they found the respondent guilty, namely, "Did the respondent strike Ida Blair?" The jury answered, "Yes."

Since the respondent was thus convicted of a breach of the public peace in the mode alleged in the information as originally drawn, exclusive of the mode inserted by the phrase of the amendment, such conviction is sufficient to sustain the judgment, and an affirmance will follow unless reversible error be shown in some other part of the record. *State* v. *Matthews,* cited above.

For the same reason we need not consider the exception to the charge that there was a presumption that the injunction was in force at the time in question. In view of the conviction shown by the special verdict, the error, if any, in this part of the charge, became immaterial; and a judgment will not be reversed for an error which, by the verdict, is rendered immaterial. *Nones* v. *Northouse,* 46 Vt. 587.

After verdict, and before judgment, the respondent moved that the verdict be set aside, assigning several grounds as follows: (1) The information was not read to him, and he did

not plead to it; (2) the amended information was not read to him, and he did not plead to it; (3) the amendment was not read to him, and he did not plead to it; (4) he did not waive the reading of the amended information, or the reading of the amendment; (5) he did not waive any plea to the amended information, or to the amendment; (6) he was not arraigned and did not plead to the information until after the jury had been impaneled and sworn, and did not before then waive arraignment or plea. To the overruling of the motion an exception was noted, and judgment was entered on the verdict.

The transcript shows that the jury was impaneled with much care and to the announced satisfaction of respondent's counsel, as well as of the State's attorney, and was sworn, before the court's attention was called to the fact that the respondent had not been arraigned. It was then announced to the court by respondent's counsel, who said in connection therewith, ''We waive the reading of the information and enter a plea of not guilty.'' The court answered, ''This is a misdemeanor; so you may do it.'' Nothing further appears of record directly concerning arraignment and plea, or express waiver thereof by respondent.

[7, 8]  It is asserted that the respondent should have been arraigned and his plea taken before the trial began, that is, before the impaneling of the jury began, and that this he did not and could not waive; that the amendment was not one of form merely, but tendered a new material issue, and it was error to try him on the amended information without a plea thereto, or to the amendment; that by all this the respondent was deprived of his liberty without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States, and also in violation of Article 10, Chapter 1, of the Constitution of the State. Reference is made to *State* v. *Drown,* 85 Vt. 233, 81 Atl. 641, and *Crain* v. *United States,* 162 U. S. 625, 40 L. ed. 1097, 16 Sup. Ct. 952, in support of the assertions.

In the Drown Case, the want of due process of law was presented as in violation of the Fourteenth Amendment. No claim was made that it was an infringement of any provision of the State Constitution. This being so, we there said, as to that question, that we were controlled by the decisions of the Federal Supreme Court, referring to *Hopt* v. *Utah,* 110 U. S. 579, 28 L. ed. 262, 4 Sup. Ct. 202, and the Crain Case, and following

the latter in holding that due process of law requires that the accused plead, or be ordered to plead, or, in a proper case, a plea of not guilty be filed for him, so there may be an issue for the jury to try, before his trial can rightfully proceed; and that the record of his conviction must show distinctly, not inferentially merely, that every step involved in due process of law and essential to a valid trial was taken in the trial court; failing this, the judgment will be erroneous. The decision in the Crain Case was by a divided court, and later, after the termination of the Drown case, substantially the same question was again before the Federal Supreme Court, in *Garland* v. *Washington*, 232 U. S. 642, 58 L. ed. 772, 34 Sup. Ct. 456. There the plaintiff in error was convicted in the trial court in the State of Washington, upon an information charging him with larceny of ''a check payable for the sum of $1,000 in money.'' This conviction was affirmed by the appellate court of the state, it being held that the failure to enter the plea had deprived the accused of no substantial right, and that having failed to make objection upon that ground, before trial, it was waived and could not be subsequently taken. This ruling, it was contended in the Federal Supreme Court, deprived the plaintiff in error of his liberty without due process of law within the meaning of the Fourteenth Amendment.

It appeared that a previous information had charged the accused with the larceny of ''one thousand dollars ($1,000) in lawful money of the United States.'' Upon that information he was arraigned, pleaded not guilty, was tried, and convicted. A new trial being awarded, the second information was filed, making the charge as stated above. Before trial the plaintiff in error filed a motion directed to the latter information, containing a motion to quash, a motion to strike out, and a motion to make more definite and certain, all of which was denied. No arraignment or plea was had upon that information. The case having been called for trial and the jury impaneled, the plaintiff in error, by his counsel, objected to the introduction of any evidence upon the ground that the State had no right to try him on the information then before the court. This objection was overruled. No specific objection was taken before the trial to want of formal arraignment upon that information; and the trial resulted in a verdict of guilty, and sentence was passed.

In the Federal Supreme Court it was contended in behalf of plaintiff in error that it was not due process of law to try, convict, and sentence the accused on an information on which he had never been arraigned and to which he had never pleaded, relying upon the Crain Case as authority for this position. In disposing of the question, the Court said it was apparent that the accused was tried and convicted upon an information charging an offence against the law; that he had a jury trial, with full opportunity to be heard, and was in fact deprived of no right or privilege in the making of his defence, unless such deprivation arises from the fact that he was not arraigned and required to plead to the second information before trial; that the object of arraignment, being to inform the accused of the charge against him and obtain from him an answer thereto, was fully subserved, for he had taken objections to the second information, and was put to trial upon that information in all respects as though he had entered a formal plea of not guilty; that due process of law does not require a state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution; that, tried by this test, it cannot be maintained that the want of formal arraignment deprived the accused of any substantial right, or in any wise changed the course of trial to his disadvantage; that all requirements of due process of law in criminal trials in a state were fully met by the proceedings had against the accused in the trial court; that the objection was merely formal, was not included in the general language of the objection to the introduction of evidence. It was further said that technical objections of the character named in the Crain Case were undoubtedly given much more weight formerly than now; but with improved methods of procedure and greater privileges to the accused, any reason for such strict adherence to the mere formalities of a trial would seem to have passed away, and the better opinion is that expressed in the dissenting opinion of Mr. Justice Peckham in the Crain Case, to the effect that the accused cannot be said to have been injured by an inadvertence of that nature, and that he ought to be held to have waived that which, in the circumstances, would have been a wholly unimportant formality; and that a waiver ought to be conclusively implied where the parties had proceeded as if the respondent had been duly arraigned, and a formal plea of not guilty had

been interposed, and where there was no objection made on account of its absence until the record was brought to an appellate court for review, to permit which would be inconsistent with the due.administration of justice; and so far as the Crain Case is not in accord with the views expressed in the Garland Case, the Crain Case was overruled.

The latter case, to the extent named, being thus overruled, we hold that the Drown Case, to the extent that it is based on the Fourteenth Amendment, must be considered without force as a judicial precedent. But that case remains undisturbed in the construction there given of the provisions of section 2274 of the Public Statutes of the State, now section 2552 of the General Laws. The provisions of this statute, we there said, contemplate and require that the respondent shall plead to the information or indictment, or in case proper therefor; a plea be entered for him, before the trial begins.

At the time of the trial of the present case, the respondent was an experienced attorney at law; and from the fact that the grounds of his motion for a continuance were as stated above, and from the further fact that, during the impaneling of the jury, his counsel, when examining the jurors on their *voir dire,* stated accurately the offence charged against the respondent in the information, it appears that the latter had knowledge of the accusation before the impanelment began. He also knew that he had not been arraigned and had not pleaded. Yet he allowed, without objection, the process of impanelment to go forward to the satisfactory conclusion of both parties, and the jury to be sworn, before he, either by himself or through his counsel, made known to the court that he had not been arraigned. Then he made it known through his counsel, at the same time expressly waiving the reading of the information and entering a plea of not guilty, which, in view of the accusation, was permitted to be done.

The holdings in the Garland Case, affirming the rulings of the appellate state court that the failure of the plaintiff in error to enter a plea deprived him of no substantial right, and that, having failed to make objection on that ground before trial, it was waived and could not thereafter be taken, show that all requirements of due process of law in criminal trials in a state, as guaranteed by the Fourteenth Amendment, were met by the proceedings had against the respondent in the case at bar in the

trial court, so far as the information, exclusive of the amendment thereto, is concerned; and that he could and did waive earlier arraignment and plea, and his waiver gave his plea then entered, through his attorney of record, the same effect as if it had been formally entered on arraignment had in the usual course of procedure.

[9]    It remains to inquire whether, in the circumstances of this case, the waiver entered obviated any difficulty in the procedure when measured by the constitutional and statutory provisions of the State; for ''The state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the Federal Constitution.'' *Brown* v. *New Jersey,* 175 U. S. 172, 44 L. ed. 119, 20 Sup. Ct. 77. The instant case, not being one of felony, but of misdemeanor, the question is here considered only to the extent necessary to meet the conditions before us. It is stated by a very careful and usually accurate writer on questions pertaining to criminal law, that as the whole object of arraignment is to identify the respondent, acquaint him with the accusation, and obtain his plea, any reasonable substitute for what precedes the plea will suffice; and consequently, with the consent of the court, the reading of the indictment or information may be waived by him. 1 Bish. Cr. Proc. (4th ed.) § 733. To the same effect are the following cases (among a great many that might be cited): *Douglass* v. *State,* 3 Wis. 821; *Shelp* v. *United States,* 26 C. C. A. 570; *Lynch* v. *State,* 99 Tenn. 124, 41 S. W. 348.

Nor is there any doubt that the respondent could, by leave of court, enter a plea of not guilty, through his attorney of record. Under the former English practice in the Court of King's Bench, when a defendant was charged with a mere misdemeanor, he could plead by attorney, and was not obliged to be personally before the court. Hand Cr. Pr. 9; 1 Chit. Cr. L. *436. Indeed, in this class of prosecutions, the practice of pleading the general issue by the respondent through his attorney of record, by leave of court, has always obtained somewhat in this State (*State* v. *Dean,* Brayt. 26), though for the most part the usual course has been and should be taken. But under our practice such leave is given or withheld when sought, according to the court's discretion in the circumstances of the particular case.

[10]   In *Lewis* v. *United States,* 146 U. S. 370, 36 L. ed.
1011, 13 Sup. Ct. 136, the Court, speaking through Mr. Justice
Shiras, said: "A leading principle that pervades the entire law
of criminal procedure is that, after indictment found, nothing
shall be done in the absence of the prisoner. While this rule
has, at times, and in cases of misdemeanors, been somewhat re-
laxed, yet in felonies, it is not in the power of the prisoner, either
by himself or his counsel, to waive the right to be personally
present during the trial." The common-law principle thus
enunciated, is of importance in determining the question of
waiver now before us; for it is "a very reasonable rule," says
Justice Cooley, "that a State Constitution shall be understood
and construed in the light and by the assistance of the common
law, and with the fact in view that its rules are still left in force,
* * * and that in judging what it means, we are to keep in mind
that it is not the beginning of law for the state, but that it
assumes the existence of a well understood system which is still
to remain in force and be administered, but under such limita-
tions and restrictions as that instrument imposes." Cooley
Const. Lim. (7th ed.) 94.

[11]   It is but fair to presume that in disposing of the
three cases noticed below in this paragraph, the Court had in
mind the foregoing rule of construction, and that Ch. 1, Art. 10,
of the State Constitution, left the rules of the common-law sys-
tem of criminal procedure still in force and to be administered
(unless changed by statute), including the distinctions, obtain-
ing or permissible, between prosecutions for felonies and prose-
cutions for misdemeanors. As early as 1844, this Court held
that in trials for inferior misdemeanors a verdict may be given
in the absence of the respondent (*Sawyer* v. *Joiner,* 16 Vt. 497);
in 1853, that nothing was better settled than that in that class
of offences, where the ordinary judgment will not extend to the
infliction of imprisonment, by way of primary punishment, the
accused may appear by counsel, and having made appearance,
the trial may proceed without regard to the continued presence
of either the respondent or his counsel (*Gardner Tracy, Ex
parte,* 25 Vt. 93); and in 1891, that in prosecution of felonies
the hearing and judgment must be had in the presence of the
respondent; but in the prosecution of misdemeanors, after the
respondent is arrested and put to plead, the court may proceed
in the trial, on the evidence, to judgment in the absence of the

respondent and of his attorneys.  *Tyler* v. *State,* 63 Vt. 300, 21
Atl. 611.  See *State* v. *Nichols,* 55 Vt. 211.

[12]    In this connection it is interesting to notice how
closely the aforementioned judicial decisions paralleled legis-
lative action.    The law now found in section 2552 of the General
Laws, which, as already stated, was construed in the Drown
Case, is found first in Laws of Vermont, 1797, Ch. 9, Sec. 37,
and in terms applies only to persons "indicted for any crime
mentioned in" that act.    The heading of the chapter is, "An
Act for the punishment of certain capital and other high crimes
and misdemeanors."    Breach of the peace is not one of the
offences mentioned in that act.    The heading of Chapter 10 is,
"An Act for the punishment of certain inferior crimes and mis-
demeanors."    Section 21 of this act provides a punishment for
a breach of the peace.    But this act contains no provisions
similar to those in G. L. 2552.    The same general classification
of crimes and misdemeanors was carried forward until the re-
vision of 1839, wherein (Ch. 102, Sec. 4) the provisions respect-
ing arraignment and the challenge of jurors, was so changed as
to apply only to persons "who shall be arraigned and put to
trial for an offence punishable with death or by imprisonment in
the state prison, for a term of seven years or more. * * *"    The
next change, material here, was had in the Laws of 1872, No.
28, whereby the statute was made to apply to every person who
shall be arraigned and put on trial in the county court, in any
criminal prosecution—in substance as in G. L. 2552.

If the inceptive purpose of the foregoing statute, so far as
it contemplates and requires that a respondent's plea shall be
entered before the trial commences, be considered as constituting
a rule of action by means of which the right of liberty cannot
be taken from him, except by the laws of the land, it clearly
shows that in the mind of the Legislature, for nearly a century,
there was a difference between the essential course of procedure
in prosecutions for high crimes and misdemeanors, and the es-
sential course in prosecutions for inferior crimes and mis-
demeanors.

[13]    In view of the recognized or permissible course of
procedure in criminal prosecutions for inferior misdemeanors,
shown above, we are of the opinion that the respondent in the
case at bar, after the jury was impaneled and sworn, could and,
by permission of the court, did waive the right to enter his plea

of not guilty of the offence charged against him in the information, before the impaneling of the jury began, and that by the failure to arraign him and take his plea before the trial began he was deprived of no substantial right under the organic law of the State, nor under Section 2552 of the General Laws.

As to the necessity of a plea being entered to the amended information, or to the amendment, as argued in behalf of the respondent, we say nothing either way; for by the special verdict that question was rendered immaterial.

*Judgment that there was no error in the proceedings, and that the respondent take nothing by his exceptions. Let execution be done.*