## State of Vermont v. Norman C. Bevins

[498 A.2d 1035]

No. 83-382

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed July 19, 1985

*John J. Easton, Jr.*, Attorney General, and *Edwin L. Hobson*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Jarvis & Kaplan*, Burlington, for Defendant-Appellant.

**Gibson, J.** This is a companion case to *State* v. *Bissonette*, 145 Vt. 381, 488 A.2d 1231 (1985). On appeal, defendant raises

several of the same issues raised therein. Although the evidence presented to each jury was similar, because defendant was tried separately we resummarize the facts, viewed in the light most favorable to the State as prevailing party. *State* v. *Lupien*, 143 Vt. 378, 381, 466 A.2d 1172, 1174 (1983).

Mrs. Clara Carlson, aged 93, shared her Burlington home with her sister, Mrs. Nellie Irish, aged 87. On the day before the offense, the roof of her home was in good repair, missing no shingles. That evening, a watchful neighbor saw a pickup truck park nearby. After defendant and two other men emerged and walked up Mrs. Carlson's driveway, the neighbor telephoned the police, who failed to arrive before the men drove away.

The following morning, defendant, along with Ralph Bissonette and a third man, drove in Bissonette's pickup to the Carlson home. Defendant and Bissonette approached the two women near their flower garden; the men falsely stated that, while working across the street, they had noticed that several shingles were missing from the roof of the Carlson home, and they asked to be hired to replace them.

Mrs. Irish said that no work could be done without the consent of Mrs. Helen Lawrence, who assisted Mrs. Carlson with her finances. Mrs. Irish telephoned Mrs. Lawrence, who told her not to have the work done. On being informed of this, the men insisted that the work needed to be done immediately, so Mrs. Irish dialed Mrs. Lawrence again and gave the phone to Bissonette. Although the line on Mrs. Lawrence's end then went dead, Bissonette pretended to converse with Mrs. Lawrence and, on hanging up, falsely told the women that Mrs. Lawrence said, "It's all right, go ahead."

The men insisted on getting the money before working. Defendant drove the women to the bank, where he gave Mrs. Carlson a slip of paper reading "James Blackmer" and "$1800" and told her to draw the check to that name. Mrs. Carlson entered the bank and obtained a cashier's check for $1800. When she emerged, defendant asked her for the check, and she gave it to him. The check was cashed that afternoon.

Defendant denied having been at the scene. The above-mentioned James Blackmer, defendant's brother-in-law, told the jury that he, himself, drove up the street with two hired men, knocked on the door, accepted the women's proposal of $1800 for the work, went to the bank with them for the check while his men

installed the shingles, and never saw either the men or the women again after that day. The jury apparently disbelieved Blackmer's story.

## I.

Defendant challenges the photographic identification procedures employed by the State. All but one of his claims echo those raised in Part I of *Bissonette, supra,* 145 Vt. at 384-87, 488 A.2d at 1233-34; we reject them for the same reasons given therein.

We also reject defendant's challenge to the jury's consideration of identification evidence based upon defendant's unexpected encounter with a witness who had earlier been unable to identify him among police photographs. The witness's identification of defendant, based upon the unexpected encounter, was emphatic. The trial court found that the encounter had not been arranged by police, and that the chance meeting bore no indicia of suggestivity. Compare *United States v. Pollack,* 427 F.2d 1168 (5th Cir.), *cert. denied,* 400 U.S. 831 (1970).

■ The holdings of the United States Supreme Court that the constitution accords a defendant a right to counsel at police-arranged, post-indictment identification procedures, *Gilbert v. California,* 388 U.S. 263, 272 (1967); *United States v. Wade,* 388 U.S. 218, 236-37 (1967), do not require that counsel be present at chance encounters which the police did not arrange. See *Kirby v. Illinois,* 406 U.S. 682, 698 n.5 (1972) (Brennan, J., dissenting).

■ We recognize that the constitution requires that, in order to use a second identification following one based upon an unconstitutional procedure, as in *Wade, supra,* 388 U.S. at 241-42, a source independent of the primary taint must be found. However, in this case we find no constitutional violation in the first identification procedure. Further, defendant has not explained how the witness's *failure* to identify defendant among the photographs in the first procedure could logically have tainted the witness's subsequent spontaneous and emphatic recognition.

We find no error.

## II.

Defendant's claims regarding the required element of the victim's "reliance" on a false statement by defendant repeat those raised in Part II of *Bissonette, supra,* 145 Vt. at 387-89, 488 A.2d

at 1235-36. We reject them, for the same reasons given in *Bissonette*.

## III.

■ As in *Bissonette*, defendant asserts that there was no evidence of a preconceived plan to commit a false pretense. Again, we affirm and refer in substantial part to our reasoning in Part III of *Bissonette*, *supra*, 145 Vt. at 390-91, 488 A.2d at 1236-37.

> The *Barr-Orlandi* test, as discussed in *State* v. *Sears*, 130 Vt. 379, 296 A.2d 218 (1972), does not require that all factual eventualities of the crime be planned, merely that a "preconceived plan" existed. In *Sears*, this Court held that "presence of a preconceived plan with a common criminal objective, plus participation in its accomplishment to some substantial measure, is enough to support an information charging such a participant as a principal." *Id.* at 382, 296 A.2d at 220.

*Id.* at 390, 488 A.2d at 1236.

Defendant's actions, as established by the evidence, "are more than sufficient for a reasonable jury to have concluded beyond a reasonable doubt that defendant approached the Carlson home, having planned to separate by some unlawful means the inhabitants from their money." *Id.* at 390-91, 488 A.2d at 1237.

Although defendant's role in this criminal endeavor differed from that of Bissonette, there was ample evidence that defendant, too, "played his part as one of the principals by assisting in the commission of the offens[e]." *State* v. *Barr*, 126 Vt. 112, 122, 223 A.2d 462, 470 (1966).

## IV.

Defendant seeks a new trial because a juror, who in voir dire denied knowledge of Bissonette, had in fact once hired him to do some work. Defendant's claim, not raised until after trial, is that the juror "failed to disclose" dealings with Bissonette, which Bissonette said had occurred eight years earlier.

■ "The granting of a new trial due to prejudice on the part of the jury is a discretionary matter for the trial court. Its decision will not be reviewed by this Court unless it was based on reasons clearly untenable or to an extent clearly unreasonable."

*State* v. *Dragon*, 135 Vt. 168, 170, 376 A.2d 12, 13 (1977) (citation omitted). Only by a showing that the juror's attitude was at least "capable of producing prejudice" to the deliberative function of the jury, *id.* at 170, 376 A.2d at 14, should the court have ordered a new trial.

■ After questioning the juror under oath, the court expressly found that, at voir dire, during trial, and even during the court's post-trial questioning, the juror had no recollection whatsoever of Bissonette. The court therefore concluded that the circumstances were not capable of prejudicing the deliberative function of the jury. The evidence presented at the hearing supports the court's findings, and the findings support the court's conclusion. We conclude that the court did not abuse its discretion in refusing to order a new trial.

## V.

Finally, citing V.R.E. 608(b),* defendant claims that the trial court erred in permitting the State to submit extrinsic evidence to challenge defendant's credibility.

As part of its case in chief, the State called a witness who testified that he saw defendant at the scene on the eve of the crime. As part of his defense, defendant denied having visited Mrs. Carlson's home on that date. On cross-examination, defendant denied having returned there two months later. In rebuttal, the State recalled its original witness, who testified that defendant was the same man he had seen at the premises on both occasions.

The rebuttal testimony reinforced the witness's earlier identification after defendant had denied it: the evidence that the witness recognized defendant again when he returned to the house on the subsequent occasion reconfirmed, after challenge, the material fact that defendant was the man who had come on the eve of the crime to help remove shingles and then returned in the morning to commit the offense. The dispute, therefore, is not over *credibility* under V.R.E. 608(b), as defendant argues; rather, it is over the offender's *identity*.

V.R.E. 404(b) provides that "[e]vidence of other . . . acts" may be admitted to prove identity. *United States* v. *King*, 703 F.2d

---

* "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his *credibility*, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." (Emphasis supplied.)

119, 125 (5th Cir.) (evidence of subsequent contacts between defendants and witness admissible where defendants challenged witness's identification of them), *cert. denied*, 464 U.S. 837, *cert. denied*, 464 U.S. 845, *cert. denied*, 464 U.S. 857 (1983); accord *United States* v. *Clemons*, 676 F.2d 122 (5th Cir. 1982); see also *United States* v. *Jackson*, 714 F.2d 809, 813 (8th Cir. 1983) (similar irregularities in documents outside scope of indictment admissible to show identity and lack of mistake). "Of course, [such evidence] must also pass the balancing test of Rule 403." V.R.E. 404, Reporter's Notes.

 In admitting the testimony, the court protected against the danger of unfair prejudice by strictly limiting evidence regarding the conduct of defendant on the subsequent occasion. As a result, its ruling not only satisfied the standards of V.R.E. 404(b), but also "pass[ed] the balancing test of Rule 403." V.R.E. 404, Reporter's Notes.

*Affirmed.*

