# State of Vermont v. Anthony D. Cardinal

[584 A.2d 1152]

No. 88-358

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed November 30, 1990

*Jeffrey L. Amestoy,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Martin & Paolini, P.C.,* Barre, for Defendant-Appellant.

**Morse, J.** Defendant was convicted, after a jury trial, of sexually assaulting his seventeen-year-old daughter. 13 V.S.A. § 3252(a)(1)(C). Defendant appeals the trial court's denial of his pretrial motions in limine, a motion for judgment of acquittal, and a motion to strike testimony. We affirm.

The issues before the Court are: (1) whether there was sufficient evidence to support a finding that the victim was placed in imminent fear of bodily harm; (2) whether evidence of defendant's uncharged bad behavior—prior sexual abuse of the victim, violent and threatening behavior toward the victim and her fiance, and conspiring to kill them—was admissible under V.R.E. 404(b) and 403; and (3) whether a prosecution witness's hearsay testimony regarding the victim's purported motive in prosecuting the defendant, protection of her younger sister, was sufficiently prejudicial to warrant reversal.

Defendant was alleged to have had sexual intercourse with the victim at about noon at a motel on August 22, 1986. According to the victim, defendant called her from a jobsite where he was a construction supervisor and instructed her to leave her workplace and meet him at the motel. She arrived at the motel, rented a room, and shortly thereafter was joined by defendant. The victim, after resisting defendant's attempt to undress her,

pulled away and undressed herself. Defendant had sexual relations with her twice over a two-hour period and left. When asked why she had left work to meet defendant at the motel, the victim stated that she was scared and that numerous death threats made by defendant over the years left her too frightened to disobey him.

## I.

### Fear of Imminent Harm

At trial, the evidence showed that defendant had maintained an incestuous relationship with his daughter for a period of four years, beginning when the victim was thirteen years old and continuing until the incident at the motel. Initially, the sexual assaults took place in the home, but when the victim was older, defendant began to arrange assignations at motels. According to the victim, the assaults took place approximately once a week.

On numerous occasions, defendant told the victim that failure to consent to his advances would be severely punished. He threatened to kill her on several occasions, even showing her the gun he would use should she fail to satisfy his demands or report his actions. After the initial assault in 1981, the victim reported the incident to her school principal who contacted a social worker. After the social worker contacted the victim's parents to arrange an interview, defendant reiterated his intent to kill her unless she recanted her story; she recanted.

Under 13 V.S.A. § 3252(a)(1)(C) (prior to 1990 amendment), sexual assault occurs when a person compels another person to engage in a sexual act "[b]y placing the other person in fear that any person will be harmed imminently." Defendant argues that the fear-producing threats must be proximate to the incident. Nothing in 13 V.S.A. § 3252(a)(1)(C) requires that the threats be made in a particular way or bear a particular temporal relation to the sexual act. The statute requires only that the victim fear imminent harm; it is silent as to how and when that fear must be instilled. Here, the victim had been conditioned by repeated threats of harm to submit to defendant over a four-year period. See *In re Nash*, 149 Vt. 63, 65, 539 A.2d

989, 991 (1987)(victim's earlier knowledge that the defendant had a knife was sufficient to supply evidence of fear of imminent harm). On this evidence, the jury was justified in finding that defendant compelled his daughter to engage in a sexual act by putting her in fear of imminent harm, and the trial court did not err in denying defendant's motion for judgment of acquittal.

## II.

### Uncharged Crimes

■ Under V.R.E. 404(b), evidence of defendant's past crimes or wrongs is not admissible to prove character and that defendant "acted in conformity therewith." However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." V.R.E. 404(b). Once evidence is shown to be relevant for any reason (other than character)—whether listed as an exception or not—it still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." V.R.E. 403. Admission or exclusion of evidence under this rule is a matter of discretion. *State v. Parker*, 149 Vt. 393, 400, 545 A.2d 512, 516 (1988). In this case, the trial court determined that the evidence of alleged uncharged acts was relevant under V.R.E. 404(b) and not unfairly prejudicial under V.R.E. 403, and it gave limiting instructions in all instances.

### A.

### Prior sexual abuse

Defendant assaulted the victim once a week over a period of four years, beginning when she was thirteen. He threatened her with physical harm and even death should she resist or report the incidents. The introduction of this evidence was not error.

■ The evidence of a continuous practice of sexual abuse accompanied by threats to the victim's life was highly probative of the victim's state of mind—that is, the existence of her fear of imminent harm, a key element of the crime—and indispensable in establishing defendant's modus operandi of overcoming the victim's will by putting her in fear of harm.

## B.

### Violent behavior

After the August 22nd incident, the victim entered into a relationship with John Tricou, whom she eventually married. Upon learning that his daughter had become engaged, defendant made threatening phone calls to Mr. Tricou. On August 31, when defendant encountered his daughter and Mr. Tricou together in Colchester, he became violent and physically assaulted his daughter by punching her in the face and attempting to pull her engagement ring off her finger, pummeled her car with his fists, and asked her if she wanted to die. At that time, he also threatened Mr. Tricou, saying, "stay away or you'll die," and attacked his car by smashing the windshield with his fist and putting dents in the side panels. Defendant then followed his daughter from the scene and rammed his truck into the back of her car.

These actions were admissible as relevant to portray a man consumed with jealousy and corroborate the daughter's allegations that her father treated her as an object for his sexual gratification. In other words, this evidence was relevant to show that defendant had a proprietary sexual interest in the victim, his actions being consistent with those of a jealous lover. See *State v. Giroux*, 151 Vt. 361, 366–67, 561 A.2d 403, 407 (1989)(holding that evidence of bad acts is admissible to show defendant's state of mind).

## C.

### "Contract" on victim's life

Mr. Powers, one of defendant's coworkers, testified that defendant had plotted with him to kill the victim and her fiance, entomb them in a car, and bury it in a large pit on the construction site where defendant and Mr. Powers both worked. Defendant's initiation of a plot to kill the victim and her fiance was admitted as relevant to defendant's guilty state of mind and the existence of a continuing plan or scheme. Whether defendant himself ever took his own talk of murder seriously is not so much the issue as the fact that he would "mouth off" about killing his daughter and her fiance.

Defendant had ample opportunity to attack Mr. Powers' credibility and the plausibility of the purported assassination plan. Whatever unfair prejudice may have been engendered was substantially outweighed by its probative worth. It was not an abuse of discretion to admit it.

## III.

### Protection of Younger Sister

A witness was present while the victim's mother spoke to the victim over the telephone. During the phone conversation, the witness heard the victim's mother ask the victim to drop the assault charge. After the mother hung up, the witness asked her what the victim's response had been. According to the witness, the mother told her the victim had said that she had to continue prosecuting the case to protect her younger sister. Defendant moved to strike this testimony; the motion was denied.

■ Defendant maintains he was unfairly prejudiced by the statement about the victim's desire to protect her younger sister because it could have prompted the jury to convict him, not for the crime charged, but to prevent the commission of a future crime. While this testimony may have had some unfair prejudicial impact, it must be considered in the context of the entire proceedings. The statement was unsolicited and unanticipated. The statement was one sentence uttered at the end of over four days of testimony. The younger daughter, who was supposedly being protected, had testified to the effect that she loved her father and had expressed no concern for her safety. The testimony was not mentioned in the State's closing argument. Granting the motion and giving a limiting instruction would only have highlighted the evidence. We conclude the court did not abuse its discretion in denying defendant's motion to strike the testimony.

*Affirmed.*