# State of Vermont v. Joseph Bruyette

[604 A.2d 1270]

No. 90-098

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 10, 1992

24

*James P. Mongeon,* Rutland County State's Attorney, Rutland, for Plaintiff-Appellee.

*Robert Katims* of *Martin & Paolini,* Barre, for Defendant-Appellant.

**Johnson, J.** We decide today that, in a prosecution for sexual assault, evidence of a defendant's prior consensual sexual relations may be admitted, under V.R.E. 404(b), to show identity.

Defendant was tried by a jury for sexual assault, pursuant to 13 V.S.A. § 3252(a)(1)(C), and for burglary, pursuant to 13 V.S.A. § 1201. The evidence established that on April 21, 1987, at approximately 1:00 a.m., defendant forcibly entered the victim's apartment, threatened her with a razor-knife, threatened her infant son who was sleeping in a nearby room, and repeatedly forced her to perform oral sex, engage in sexual inter-

course, and perform various degrading acts more particularly described below.

Although the victim was blindfolded throughout much of the ordeal, she provided the police with details that caused the investigation to focus on defendant. Later, defendant's girlfriend, who had read about the incident in the newspaper, provided the police with additional incriminating evidence. On April 27, the police obtained a search warrant to monitor and tape-record conversations between defendant and his girlfriend through a concealed transmitter. During one of the conversations, which took place inside a parked car on Route 7, in front of a restaurant, defendant made statements that police considered sufficiently incriminating to justify his immediate arrest.

Defendant was arraigned on April 28, 1991, before a district court judge, who found that probable cause supported the State's informations charging defendant with burglary, kidnapping, and sexual assault. He pled not guilty to the charges. Before trial, defendant moved to suppress the tape recorded conversations and certain physical evidence; these motions were denied by the trial court.

A central issue at trial was identity. To prove identity, the State introduced evidence indicating that defendant's prior distinctive sexual conduct with his girlfriend matched the aberrant sexual conduct in which the victim was forced to engage. Over objection, the girlfriend testified about specific sexual activities that she engaged in with defendant, specific words and phrases that he asked her to repeat, role-playing, bondage, illegal drug use during sex, and defendant's sexual fantasies about abducting a blonde woman, forcing her to use cocaine and to perform various sexual acts. The evidence was graphic and very specific. She testified:

> [Defendant] was very into control. He liked to do role-playing, master-slave like. He [would] be the master and I would be the slave . . . . He would say things, he wanted me to talk dirty to him and when I wouldn't say the things that he thought I should say, he would tell me, repeat after me, tell me that you are my horny, little slut . . . . He used to like to say he wanted me to be his lady on the street and his whore at home . . . .

She also detailed specific sexual practices that she engaged in with defendant. For example, she testified that defendant often used cocaine during sexual relations and would interrupt their sexual activity and leave to "get high." He would grab her hair and manipulate her head during oral sex and tell her that if she did not "do this right . . . he was going to jam it so far down my throat that I would throw up and he would make me lick it up." Defendant also threatened her with anal sex.

The victim testified that her assailant repeatedly forced her to engage in oral sex and sexual intercourse. He blindfolded her, tied her up, and threatened her with anal sex. He also manipulated her head during oral sex by grabbing and pulling her hair. When she gagged and vomited during oral sex, he forced her to lick up her vomit. The victim was also forced "to say that I was his dirty slave and that he was my master . . . [and] that I was a nasty slut . . . [and] I would be his whore in the bedroom . . . but when I was out in public I . . . would look and act like a lady."

According to the victim, her assailant forced her to swallow cocaine, which she spit out. He interrupted his assault on several occasions to "get high." After several hours of repeated sexual activity, he left the apartment. The victim was then able to report the incident to the police.

The trial court held that the sexual conduct, statements, and fantasies described by defendant's girlfriend demonstrated a pattern that was "very close to the testimony of [the victim] as to what happened in her case . . . [one that is] so idiosyncratic that with reasonable probability it points to the identity of the assailant . . . [and] amounts to something like a signature." Thus, the court admitted the testimony to show the assailant's identity and to show that he had planned to commit the offenses.

Defendant alleges four errors below: (1) evidence of his prior consensual sexual activity with his girlfriend was erroneously admitted for the purpose of showing identity; (2) his motion to suppress his tape recorded conversations with his girlfriend should have been granted; (3) his conviction for a third sexual assault should be reversed because he was not properly arraigned on the charge, and because the charge was not supported by probable cause; and (4) certain physical evidence was illegally seized.

## I.

## A.

The first issue is whether evidence of defendant's prior consensual sexual conduct with his girlfriend, which was strikingly similar to the conduct perpetrated on the victim, is relevant and admissible to show identity. Defendant argues that this testimony was inadmissible under V.R.E. 404(b), that it was irrelevant, and that its prejudicial effect outweighed its probative value.

V.R.E. 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule operates to exclude evidence of prior acts that are similar to the charged crime, if the evidence is introduced for the purpose of showing a general propensity to commit the acts in question. See *State v. Parker*, 149 Vt. 393, 397, 545 A.2d 512, 515 (1988). Particularly in jury trials, the dangers of prejudice and confusion outweigh the probative value of such evidence, if it is offered only for that purpose. E. Cleary, McCormick on Evidence § 190, at 557 (3d ed. 1984). Evidence of prior acts may be admitted, however, if it is relevant to some other legitimate issue in the case, such as identity, intent, preparation, plan, or knowledge. *State v. Cardinal*, 155 Vt. 411, 414, 584 A.2d 1152, 1154 (1990). Although relevant, the evidence will be excluded if its probative value is substantially outweighed by its prejudicial effect. V.R.E. 403; *Parker*, 149 Vt. at 400, 545 A.2d at 516.

When prior act evidence is offered to show identity, the test for relevance is demanding. See *State v. Hall*, 40 Wash. App. 162, 165–66, 697 P.2d 597, 600 (1985). The "pattern and characteristics" of the prior acts must be so distinctive, in effect, to constitute the defendant's signature. See *id.* (a prior sexual act may be admitted to show identity only if it is so similar that it constitutes the handiwork of the accused); E. Cleary,

*supra,* § 190, at 560. Although the prior acts of the accused and the charged acts do not have to be identical, they must possess common features that make it highly likely that the unknown perpetrator and the accused are the same person. Whereas a few common features that are unique may be sufficient, a larger number of them, less remarkable, but taken together, may also have significant probative value. *United States v. Myers,* 550 F.2d 1036, 1045 (5th Cir. 1977).

Defendant argues that the stringent relevance standard for identity is not met in this case because the sexual acts described by his girlfriend are not uncommon, and are described in books, magazines and films available to the general public. Therefore, he contends, his prior sexual relationship with his girlfriend cannot be considered so idiosyncratic as to identify him as the perpetrator in the case at bar.

Notwithstanding the stringency of the criteria for admissibility, evidence of prior similar crimes has been admitted to show identity in many rape and sexual assault cases. For example, in *State v. Shedrick,* 59 Ohio St. 3d 146, 150–51, 572 N.E.2d 59, 64–65 (1991), evidence of a past rape was used to show the assailant's identity under Rule 404(b),[1] where the defendant attacked both victims in a similar way, turned each victim's pants inside out, and assaulted both victims vaginally and anally. The court concluded that evidence of the defendant's prior rape of the first victim was sufficiently similar to be probative on the issue of identity. *Id.* at 151, 572 N.E.2d at 65. In *State v. White,* 101 N.C. App. 593, 595–601, 401 S.E.2d 106, 107–10 (1991), evidence of a past rape was used to show identity under Rule 404(b) where both victims were held in the same manner, both were told to "shut up," and both were ordered to remove their clothing. When the victims refused, the defendant removed their clothing, and ordered both victims to "put it in." These cases, and numerous others like them,[2] are necessarily fact-specific, but they provide guidance on the kind of prior sexual

---

[1] Vermont Rules of Evidence are patterned on the federal rules, as are the rules of evidence of Ohio and numerous other states.

[2] See Annotation, *Admissibility, in Rape Case, of Evidence That Accused Raped or Attempted to Rape Person Other than Prosecutrix,* 2 A.L.R.4th 330, 395–403 (1980).

practices that have been admitted under Rule 404(b) against defendants accused of rape. At the very least, the cases show that evidence of sexual acts that are well known to the majority of adult members of society was admitted when it had a strong tendency to identify the defendants.

Thus, that the sexual acts and practices detailed in the testimony here may be engaged in by others does not necessarily mandate the exclusion of the evidence under Rule 404(b). Application of the rule focuses on the degree of similarity between the prior acts and the charged acts, not on whether the acts themselves are uncommon. It is unlikely that the number of shared characteristics[3] between the ritualistic nature of defendant's sexual activity with his girlfriend, and that of defendant and the victim, occurred by chance. When the sexual acts are taken together with the specific statements that the girlfriend and the victim were forced to repeat, and the defendant's frequent use of cocaine during the activity, the evidence strongly tended to show that defendant was the perpetrator. We conclude that the evidence was highly probative on the identity issue, and that the relevance standard was satisfied.

Defendant asserts, however, that his girlfriend's testimony could not be relevant because her sexual relationship with him was consensual, citing *State v. Coe*, 101 Wash. 2d 772, 684 P.2d 668 (1984). In *Coe*, the defendant's girlfriend testified that he liked to masturbate, and used certain vulgar terms while they were engaged in sexual relations. The court held, however, that the perpetrator's words and actions with the victim, though similar to Coe's behavior with his girlfriend, were not so idiosyncratic as to establish identity under Rule 404(b). *Id.* at 778, 684 P.2d at 672. The court then questioned, in dicta, whether evidence of an individual's behavior in a consensual sexual relationship could ever be relevant to demonstrate modus operandi in a prosecution for a violent, nonconsensual act. *Id.*

Only one other court has dealt with the admission of prior consensual sexual conduct under Rule 404(b) in a prosecution for sexual assault. *State v. Plaster*, 424 N.W.2d 226, 227–31 (Iowa 1988). There, in a trial for sexual assault on a different

---

[3] The testimony shows at least eleven points of similarity between the victim's testimony and that of the girlfriend.

victim, a woman testified about injuries she received during prior consensual relations with the defendant. The witness testified that the defendant had vigorously manipulated her vagina with his hand, causing her to bleed, and that despite her requests to stop, he continued the manipulation for some time. The prosecution charged the defendant with committing virtually the same sexual acts on the victim. Even though consent was the issue, not identity, the Supreme Court of Iowa held that evidence of prior consensual sexual conduct with the partner was properly admitted under Rule 404(b) because it tended "to show the same peculiar and characteristic behavior pattern manifested in the crime charged." *Id.* at 230.

▆▆ In our view, when the issue is identity, the key to admissibility under Rule 404(b) is similarity, not consent. The fact that defendant obtained his girlfriend's consent to engage in the same acts he perpetrated on the victim is of little relevance to whether the acts were so similar as to demonstrate the likelihood that defendant committed them. It is true that, in many rape and sexual assault cases, the prior act evidence admitted to show identity includes the manner of approach and the method of subduing a victim. See, e.g., *State v. Johnson*, 317 N.C. 417, 421–30, 347 S.E.2d 7, 12–15 (1986). Here, the points of similarity between the prior acts and the charged acts, although not related to the approach of the victim or his girlfriend, were nonetheless sufficient, in and of themselves, to point to the accused.

## B.

▆▆ Evidence of prior acts that is relevant under V.R.E. 404(b) may still be excluded under V.R.E. 403,[4] if its prejudicial effect outweighs its probative value. *State v. Bevins*, 146 Vt. 129, 135, 498 A.2d 1035, 1039 (1985). Defendant argues that, given what he asserts to be the limited probative value on the issue of identity, admission of the prior acts might have provoked the jury to punish him for his activity with his girlfriend.

---

[4] V.R.E. 403 states: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ In *Parker*, 149 Vt. at 400, 545 A.2d at 517, we recognized that "[v]irtually all evidence for the prosecution in a criminal case is prejudicial to some degree at least against the accused." Thus, evidence must be excluded under Rule 403(b) only if it is unfairly prejudicial to a defendant. *Plaster*, 424 N.W.2d at 231. Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, "arous[e] its sense of horror, provok[e] its instinct to punish, or trigge[r] other mainsprings of human action [that] may cause a jury to base its decision on something other than the established propositions in the case." 1 J. Weinstein & M. Berger, Weinstein's Evidence § 403[03], at 403-33-39 (1991).

■ In balancing probative value against prejudicial effect, the trial court looks at the need for prior act evidence in light of other evidence available to the prosecution that supports the same issue, as well as the degree of its probative value, and the extent to which the jury is likely to be aroused to hostility by the evidence. E. Cleary, *supra*, § 190, at 565.

In the instant case, defendant refused to provide forensic evidence samples for identification purposes when ordered to do so by the trial court. Identity was the central issue of the case. The court concluded that defendant's refusal had enhanced the significance of other forms of identification—those that could only be shown by circumstantial proof—and had therefore made the evidence of prior acts critical to the State's case. See *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir. 1990) (prior act evidence admissible to establish a critical and contested element of a crime). The evidence was admitted with a limiting instruction to the jury on the permissible uses of prior act evidence. See *Cardinal*, 155 Vt. at 414, 584 A.2d at 1154.

■ We cannot say that the trial court abused its discretion. See *Parker*, 149 Vt. at 401, 545 A.2d at 517; *State v. Picknell*, 142 Vt. 215, 230, 454 A.2d 711, 718 (1982). We agree that the evidence was highly probative on the issue of identity. Except for cocaine use, Bruyette's prior consensual acts with his girlfriend were not criminal, so that little danger existed that the jury would convict defendant because of past criminal conduct. Although the jury may have considered, as defendant argues, that his conduct with his girlfriend was "abnormal" or "antiso-

cial," we do not find as a matter of law that the potential for this conclusion is so unfairly prejudicial as to outweigh the probative value of the evidence.

## II.

We now address whether the trial court erred in denying defendant's motion to suppress his tape recorded conversations with his girlfriend. Although police first obtained a search warrant to record the conversations, defendant argues that certain information given by his girlfriend and set forth in the probable cause affidavit did not satisfy the standards of V.R.Cr.P. 41(c) on hearsay, and that, even if the rule was satisfied, the affidavit as a whole did not provide sufficient probable cause for the warrant.[5]

Detective Linda Jones of the Rutland Police Department was the affiant. Three persons provided the information to Detective Jones that made up the pertinent sections of her affidavit— the victim, a police officer who knew defendant, and defendant's girlfriend. The victim gave a brief description of the sexual assault that occurred on April 21, 1987, on Hopkins Street, including that the assailant was masked and forced her to wear a blindfold. The victim was able to state that the assailant had curly hair, a beard and a mustache, and that the assailant stated that if "she were his, she would be his whore in the bedroom and would be treated like a queen and that when she went out the door, she would look like a lady."

The police officer who knew defendant, Lt. Pockette of the Rutland Police Department, "advised . . . that one Joseph Bruyette fit the description of the assailant. . . . Bruyette had been assaultive to his girlfriends. . . . Bruyette told [Pockette] that women were his property and that he owned them."

---

[5] The concurrence holds that the electronic participant monitoring conducted in this case is controlled by *State v. Brooks*, 157 Vt. 490, 494, 601 A.2d 963, 965 (1991), which held that no warrant was required for such monitoring where the participants talked to each other in a public parking lot, through the open windows of two cars. The concurrence, in our view, reads too much into *Brooks*. The potential areas of Article 11 protection between the extremes presented in *State v. Blow*, 157 Vt. 513, 602 A.2d 552 (1991), and *Brooks* are an open question. We do not view *Brooks* as being sufficiently expansive to be necessarily indistinguishable from this case, and, therefore, prefer to ground our decision on an alternative basis.

Paragraph 5 contained the girlfriend's information:

> [Bruyette's girlfriend] came into the Police Station on 4/24/87 and requested to talk to Lt. Pockette and me. [She] is Bruyette's present girlfriend. [She] had seen the description of the assailant in the newspaper and told me that Bruyette did fit the description. [She] also stated that Bruyette had told her that he had done something all by himself and that she felt he was capable of doing it because of past experiences with him. [She] stated that on 4/21/87 in the afternoon hours she cut his beard off. She stated he told her not to tell anyone why he had done this. [She also] stated that when Bruyette told her that he had done something all by himself, she told him she didn't want to know about it because then she wouldn't have to lie about anything.

Defendant takes specific issue with the paragraph above, contending that the hearsay therein did not demonstrate the informant's basis of knowledge and veracity as required by Rule 41(c).

 Rule 41(c) permits the use of hearsay, in whole or in part, to satisfy a finding of probable cause, as long as "there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." In *State v. Ballou*, 148 Vt. 427, 433, 535 A.2d 1280, 1283 (1987), we held that Rule 41(c)'s standard for issuing warrants based on hearsay adopts the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 110–16 (1964), and *Spinelli v. United States*, 393 U.S. 410, 415–19 (1969). The purpose of the test is to ensure that a judicial officer, to whom application for a warrant is addressed, has information from which to make an independent determination of an informant's basis of knowledge and veracity. *State v. Barrett*, 132 Vt. 369, 373, 320 A.2d 621, 624–25 (1974); 1 W. LaFave, Search and Seizure § 3.3(a), at 613 (2d ed. 1987).

 Here, a judicial officer could conclude independently that the information in paragraph 5 of the affidavit demonstrated an adequate basis of knowledge and was reliable. First, all of the girlfriend's information was based on personal knowledge, by virtue of her special relationship to defendant, as

well as her observations of his conduct and conversations with him shortly after the crime occurred. Second, she identified herself, which "substantially minimizes the danger of casual rumor or irresponsible conjecture [that] accompanies the report of an anonymous professional informant." *State v. Northness*, 20 Wash. App. 551, 552, 582 P.2d 546, 549 (1978). Third, it was she who approached the police, and, we may infer, did so at the risk of serious reprisal by defendant. Fourth, her information was corroborated by other facts in the affidavit. Independent police investigation had already centered on defendant because he was "assaultive to his girlfriends," believed he owned women, and fit the physical description of the assailant.

██ ██ The only questions remaining are whether the entire affidavit provided sufficient information to establish probable cause to believe that defendant committed these crimes and that evidence of the crimes would be found in conversations with his girlfriend. It is significant that two persons, Lt. Pockette and Bruyette's girlfriend, had concluded independently that defendant was a possible suspect, because of his physical description and attitude toward women. The girlfriend added the additional and critical facts that defendant wanted his appearance altered on the same day as the sexual assault, and that he had told her he had "done something all by himself." These facts were adequate to permit a judicial officer to conclude that there was probable cause to believe defendant committed the crime. It was then a reasonable inference, based on defendant's previous statement to his girlfriend, that he had "done something," that he would divulge more about it to her in private conversation. Therefore, the evidence of the tape recorded conversations was properly admitted.

### III.

### A.

Defendant was charged initially with one count of sexual assault outside the apartment and one count of sexual assault inside the apartment. He was arraigned on the charges and pled not guilty. Subsequently, the State amended the latter count to charge a third count of sexual assault inside the apartment. Defendant was not formally arraigned on the charges, as

amended, and was not asked to plead to the charge in court; he contends that these omissions require reversal.

A central purpose of an arraignment is to insure that a defendant understands the nature of charges against him so that he can prepare a defense. See W. LaFave & J. Israel, Criminal Procedure § 20.4, at 802 (1985). It may be reversible error if a defendant is not arraigned on any charge, *State v. Drown*, 85 Vt. 233, 239–40, 81 A. 641, 643 (1911), *overruled, in part, State v. Prouty*, 94 Vt. 359, 365–69, 111 A. 559, 562–64 (1920), or if an arraignment is not held after a material change is made to the charges. E.g., *State v. Cardwell*, 187 Mont. 370, 376, 609 P.2d 1230, 1233 (1980); *Hanley v. Zenoff*, 81 Nev. 9, 12, 398 P.2d 241, 242–43 (1965).

Here, no circumstances that would require reversal were present. Defendant knew the nature of the additional sexual assault charge at the time of his arraignment and plea. The amendment made no material change to any of the charges. The amendment did not allege additional facts; it simply separated the original second count into two and pled each with greater specificity. There was no prejudice to defendant from his failure to be arraigned after the charges were separated. See *State v. Brown*, 306 N.C. 151, 174, 293 S.E.2d 569, 584 (1982) (failure to arraign only reversible error if defendant not properly informed of the charge against him). Therefore, the trial court's failure to arraign defendant on the amended charge was not reversible error.

### B.

Defendant also maintains that his conviction should be reversed because the State did not provide an affidavit establishing probable cause to support the amended sexual assault charge. He cites V.R.Cr.P. 4(b), which prohibits issuing arrest warrants or summonses on an information unless a judge makes a probable cause finding. The State did not, however, request a summons or arrest warrant when the sexual assault charge was amended.

A defendant must inform a trial court when he reasonably believes that he is entitled to a remedy, or when he

believes that a court should act on his behalf. *State v. Hood*, 123 Vt. 273, 277, 187 A.2d 499, 502 (1963); V.R.Cr.P. 12(f); see *State v. Welch*, 136 Vt. 442, 444, 394 A.2d 1115, 1116 (1978). In this case, the amendment to which defendant now objects was entered on October 17, 1988. Defendant did not object at that time, nor did he request a probable cause review. Having failed to do so, he waived the issue. *State v. Wright*, 154 Vt. 512, 520, 581 A.2d 720, 725–26 (1989).

## IV.

Although defendant was represented by counsel, he filed a pro se brief challenging the admission of his girlfriend's testimony to the effect that he owned certain items of physical evidence found in a garage that he shared with her. He also asserts that the evidence was illegally seized because the police did not have a search warrant. The trial record indicates that Bruyette's girlfriend told the police that some personal property she shared with defendant was stored in a garage, and that she voluntarily consented to participate in a search through this property for evidence to be used in this case. At the garage, the police watched while she physically searched the shared bags and boxes containing the property in question. During the search, she showed many different items to the police and asked if they had evidentiary value. Among these were a silver-colored ski mask, a knife, a telephone cord, and an elastic bungi-cord, all of which were admitted into evidence over defendant's objection. Defendant's brief fails to identify any legal basis to justify suppressing her testimony about this physical evidence, and we can think of no basis for doing so.

Defendant's contention that the evidence was improperly seized because the police failed to obtain a search warrant is also without merit. The trial court found, with ample support in the record, that defendant and his girlfriend had equal and unlimited access to the items under consideration. In these circumstances, the law recognizes the power of either joint owner to consent to a police search of the property. *United States v. Matlock*, 415 U.S. 164, 171 (1974); *Frazier v. Cupp*, 394 U.S. 731, 740 (1969); see *State v. Chenette*, 151 Vt. 237, 249–50, 560 A.2d 365, 373–74 (1989) (where defendant's files not kept in a

special location, or under lock and key, custodian of records had apparent authority to consent to search and seizure). The court also found, again, with ample support, that the girlfriend's consent to the search was freely and validly given. It follows that the search was not unreasonable, even in the absence of a warrant.

*Affirmed.*

**Dooley, J.,** concurring as to Part II. I join in all parts of the majority opinion except for Part II, which is unnecessarily grounded on whether there was a showing of probable cause to support the warrant. The issue is entirely controlled by *State v. Brooks*, 157 Vt. 490, 494, 601 A.2d 963, 965 (1991), which holds that "warrantless electronic participant monitoring of face-to-face conversations" in cases like this "does not violate the protections of Article 11 of the Vermont Constitution." The applicable federal law under the Fourth Amendment to the United States Constitution is similar. See *United States v. Caceres*, 440 U.S. 741, 750–51 (1979); *United States v. White*, 401 U.S. 745, 751 (1971). Thus, the participant monitoring in this case is valid without a warrant and without a finding of probable cause. The motion to suppress was properly denied, and there is no reason to go further. I am authorized to state that Chief Justice Allen and Justice Gibson join in this concurrence.