STATE OF NORTH CAROLINA v. ALLEN LEE LANGFORD

No. 399A86

(Filed 7 April 1987)

1. **Criminal Law § 101.2— newspaper article—exposure of jury to voir dire testimony—absence of prejudice**

   Although the trial court failed to follow the requirements of N.C.G.S. § 15A-1236(a)(4) to admonish the jurors to "avoid reading, watching, or listening to accounts of the trial," any exposure of the jury to a newspaper article concerning matters inquired into during a *voir dire* hearing on the first day of defendant's trial was not so prejudicial as to require a new trial where defendant himself placed information substantially similar to that contained in the article before the jury during the course of the trial.

2. **Rape and Allied Offenses § 6.1— first degree rape—employment or display of knife—evidence not conflicting—instruction on second degree rape not required**

   The evidence in a first degree rape case was not conflicting as to whether defendant "employed or displayed" the knife in his possession to the victim so as to require the trial court to instruct on the lesser offense of second degree rape where it was undisputed that defendant had an open knife in his hand or lying within his reach during all times pertinent to his act of sexual intercourse with the victim; the evidence would not support a reasonable finding that the victim was not aware of the knife; and defendant's statement to a detective was not a denial that he had employed or displayed a knife but amounted to a description of how he had done so.

ON defendant's appeal of right under N.C.G.S. § 7A-27(a) from judgment entered by *Kirby, J.,* on 29 January 1986 in Superior Court, HENDERSON County, sentencing the defendant to imprisonment for life upon his conviction by a jury for first-degree rape. Heard in the Supreme Court on 11 March 1987.

*Lacy H. Thornburg, Attorney General, by James Peeler Smith, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The defendant contends on appeal that he is entitled to a new trial because the trial court denied his request to inquire into possible exposure of the jury to prejudicial newspaper reports. He also contends he is entitled to a new trial because the trial

court erroneously failed to instruct the jury to consider a verdict of second degree rape. We find no prejudicial error in the defendant's trial and reject both contentions.

The State introduced the victim's testimony at trial which tended to show that she was working in her father's electronics shop at 2:45 p.m. on 24 September 1985. The defendant, Allen Lee Langford, entered the store as she was talking on the telephone. She told the defendant that she would be with him in a second. He then walked behind her desk, placed a large knife to her neck, and told her to hang up the telephone. She did as she was told.

The defendant told the victim that he had been watching the shop and knew that she was alone. She began to struggle and tried to push the defendant's knife away, but he pulled her backwards and threw her down. The defendant then ordered the victim to remove her clothes. When she refused, he ripped her blouse open and cut the front of her brassiere.

The victim began screaming, and the defendant Langford told her to shut up or he would kill her. He then pulled her pants off. While she was screaming, the defendant slapped her across the face and "busted" her lip. The defendant and the victim struggled on the floor and he attempted to have sex with her. As they fought, she hit her head on the floor and was knocked out. The defendant was gone when the victim regained consciousness at about 3:00 p.m. Blood from inside her vagina had formed a pool on the floor at that time. She immediately contacted her father who called the police.

The victim testified that the knife the defendant used during the attack was "maybe 10 inches long," including the handle. She identified a Case XX folding knife as looking "just like" the knife the defendant used during his attack on her. When the defendant was arrested on 27 September 1985, he had a Case XX folding knife in his pocket.

Dr. Robert Finch testified that he examined the victim on 24 September 1985 in the emergency room of Pardee Hospital in Hendersonville. She told him at that time that she had been raped. His examination of her revealed a bruise on her upper lip, a small cut on her neck, some scratches on her cheek, scratches on her elbow, a scratch and bruise on her knee, and a cut at the

opening of her vagina. Blood was coming from her cervix and there was blood in her vaginal vault or within her vagina. Dr. Finch testified that he could not see any tears within the vagina, and "presumably the blood coming from the cervics [sic] was the result of trauma in the uterus." Dr. Finch further testified that the injuries he observed "certainly are consistent with traumatic penetration of the vagina consistent with a sexual assault."

George Erwin, Deputy Sheriff and Captain of Detectives of the Henderson County Sheriff's Department, testified that he interviewed the defendant on the day the defendant was arrested. After the trial court conducted a *voir dire* hearing, Erwin was permitted to testify before the jury that the defendant stated that he had entered the electronics shop where the victim worked to use the telephone. She had "flirted" with him. He said that he "started to get something going with her and she just started flipping out and it flipped me out but I never knocked her out." The defendant acknowledged slapping the victim one time and stated that he thought he had hit her in the mouth. At points in his statement, the defendant indicated that the victim fought him and screamed. But at other points in his statement, he indicated that she had not. The defendant acknowledged that he had sexual intercourse with the victim. He also acknowledged that he had a Case XX knife about seven or eight inches long with him at the time, and that the blade was open.

The defendant offered evidence by exhibiting his face to the jury and having the jury examine it at close range. He offered no additional evidence.

[1] By his first assignment of error, the defendant contends that the trial court erred by denying his request to conduct an inquiry as to whether the jurors had been exposed to prejudicial and inflammatory news coverage between the first and second days of trial. We find it unnecessary to address or decide this question, however, as the defendant in the present case has waived his right to assign it as error.

Toward the end of the first day of trial, the State called Detective Captain Erwin to testify concerning the defendant's statement to him. A *voir dire* hearing was commenced to determine whether Erwin's testimony in this regard would be admitted. During the *voir dire* hearing evidence was introduced

tending to show that the defendant was an habitual user of hard drugs, and had been since he was eleven years old. He had been charged at various times with thirty-five criminal charges in Henderson County. In addition to the attack on the victim in this case, the defendant had admitted to a rape of a clerk at a convenience store, an attempted rape of a female jogger, and an indecent exposure.

The *voir dire* hearing had not been completed when the trial court recessed for the evening. It was continued when the trial court reconvened the following morning. The defendant presented the testimony of a clinical psychologist concerning the defendant's drug abuse and resulting psychological state in an effort to show that his confession to the crime charged in the present case had been involuntary. At the conclusion of the *voir dire* hearing, the trial court denied the defendant's motion to suppress his statements made to Detective Captain Erwin.

The defendant's counsel thereafter brought a copy of that morning's *Hendersonville Times* to the trial court's attention. That newspaper contained an account of most of the testimony offered during the *voir dire* hearing on the previous day. The defendant's counsel moved for a mistrial, or, "at the very least, to inquire of the jurors whether or not they have read this article. . . ." The trial court denied the motion for mistrial and denied the defendant's request for an inquiry of the jurors. Instead, the trial court instructed the jury as follows:

> I think we're ready to resume, however, before we do that I want to say to you that it has been called to my attention that there is a local newspaper and that the local newspaper rightfully so, prints news of local events and may very well print stories concerning this matter. I instruct you that your duty in this case is to try this case from the evidence which you hear from the witness stand, and not consider anything that you may have read about this matter in the local press. That's all I desire to say about that.

The defendant correctly points out that the trial court erred when it failed to follow the requirements of N.C.G.S. § 15A-1236 (a)(4) to admonish the jurors to "avoid reading, watching, or listening to accounts of the trial . . . ." *State v. Harris*, 315 N.C. 556, 340 S.E. 2d 383 (1986). The defendant argues that this failure,

combined with the trial court's denial of his motion for a mistrial and refusal to inquire into possible exposure of the jury to the prejudicial newspaper article in question, amounted to prejudicial error entitling him to a new trial. We do not agree.

In the recent case of *State v. Barts*, 316 N.C. 666, 343 S.E. 2d 828 (1986), we stated that:

> When there is a substantial reason to fear that the jury has become aware of improper and prejudicial matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial.

316 N.C. at 683, 343 S.E. 2d at 839. No such inquiry was conducted by the trial court in the present case. We find it unnecessary here, however, to decide whether the action of the defendant's counsel in merely providing a copy of a newspaper article to the trial court, standing alone, could provide "a substantial reason to fear" that the jury had been influenced by the article. We assume here *arguendo* that the jury was exposed to the newspaper article in question. We conclude, however, that any such exposure was not so prejudicial to the defendant as to require a new trial, since the defendant himself placed information substantially similar to that contained in the article before the jury during the course of the trial.

After the trial court denied the defendant's alternative motions for a mistrial or for an inquiry as to the jurors' exposure to the article, it completed the *voir dire* hearing and ruled Detective Captain Erwin's testimony concerning the defendant's statement admissible. Thereafter, in the presence of the jury and in response to questions by the defendant during cross-examination, Erwin testified that he had known of the defendant's drug abuse for years. After Erwin testified on cross-examination to statements by the defendant tending to establish the elements of the crime charged, the following colloquy took place between defense counsel and Erwin:

> Q. Detective Erwin, you've heard *stated in Court here* today and *yesterday* that Allen Langford has been involved, I say involved in, I mean charged or convicted, of course, I don't know the breakdown, if any, between the two, of approx-

imately 35 criminal offenses, of course, much less serious than what we're here today on. But Detective Erwin, you don't know of any incidents, do you on any of those 35 or whatever instances that Allen Langford has ever made any statement or confession to the authorities, do you?

A. I have never been told.

Q. You don't know, right?

A. Right, I don't know if he has or not.

Q. It wouldn't surprise you, well strike that. Before this occasion, before this incident occurred, before you initiated this investigation, you knew who Allen Langford was, didn't you?

A. Yes sir, I knew of him. I had never even seen the gentleman but I knew of him. I knew the name, Allen Langford alias Shorty Langford.

Q. How did you know his name?

A. Different investi—I'm the Captain of Detectives—

Q. Yes sir.

A. —and my responsibility is to supervise all criminal investigations.

Q. Detective Erwin, as you were testifying you are Chief of Detectives and are aware of most investigations at least to some extent that go on in that Department?

A. Yes, that's correct.

Q. You knew Allen Langford's name and probably some of the things he'd been involved in?

A. Yes sir.

Q. But no one ever told you in your Department about his propensity or inclination to cooperate with authorities when approached?

A. No sir, they never told either one way or the other.

(Emphasis added.)

The evidence introduced before the jury by the defendant, therefore, tended to show the defendant's habitual use of drugs

and the fact that he had been "charged or convicted" of 35 criminal offenses in addition to that charged here. The defendant also informed the jury by this line of questioning that he was known to use an alias. Further, the defendant introduced the substance of much of the previous day's *voir dire* hearing.

Even if it is assumed *arguendo* that the defendant was entitled to a jury which had not been exposed to any information concerning the matters inquired into during the *voir dire* hearing on the previous day, the defendant waived his rights in this regard by specifically opening an inquiry into the nature of the testimony at the *voir dire* hearing and by drawing out much of the same testimony during his cross-examination of the witness Erwin before the jury. Even a constitutional right may be waived "by conduct inconsistent with a purpose to insist upon it." *State v. Hutchins*, 303 N.C. 321, 341-42, 279 S.E. 2d 788, 801 (1981). Certainly the actions of the defendant in the present case in putting before the jury essentially the same information contained in the newspaper report of the *voir dire* hearing amounted to "conduct inconsistent with a purpose to insist upon" any right he may have had to keep such information from the jury. Therefore, we can conclude only that the defendant waived any rights which may have accrued to him by virtue of the possibility that members of the jury had been exposed to similar information through the newspaper article of which he now complains. This assignment of error is without merit and is overruled.

[2] The defendant next assigns as error the trial court's failure to instruct the jury with regard to the lesser offense of second degree rape. The defendant argues in support of this assignment that the evidence was conflicting as to whether he had "employed or displayed" the knife in his possession to the victim as contemplated in N.C.G.S. § 14-27.4(a)(2)a.

For purposes of this argument, the defendant acknowledges that he had the knife open and in his possession at the time he had sexual intercourse with the victim. He also recognizes that the victim gave direct testimony tending to show unequivocally that the defendant held the knife to her neck and cut her neck with it while he forced her to have sexual intercourse. She also testified that he cut off her brassiere with the knife prior to raping her.

The defendant argues, however, that certain parts of his statement to Detective Captain Erwin tended to show that he neither employed nor displayed the knife at the time he had sexual intercourse with the victim. He contends, therefore, that the evidence was in conflict in this regard, and that he was entitled to an instruction on the lesser offense of second degree rape. We do not agree.

The defendant points specifically to a portion of his statement to Erwin which was introduced at trial and was as follows:

Erwin: Okay, all right, did you ever threaten the girl with the knife that you remember?

Langford: I had the knife and I layed [sic] the knife down.

Erwin: Okay, where did you lay it at?

Langford: She could have plainly, right with, I mean I layed [sic] it down right in front of her and her back was turned away from me, I mean layed [sic] it down.

Erwin: Okay, is this before you had intercourse?

Langford: Yes, I mean—

Erwin: Was the blade open or was it closed? The blade was open?

Langford: Yes, I just layed [sic] it down there and I thought maybe she would grab it and stab me or something but she didn't, maybe that's what I was hoping for.

Erwin: Okay.

The defendant argues that his statement to Erwin in this regard "negated both the use and display of a knife." We do not agree.

When there is a conflict in the evidence as to whether the defendant had a deadly weapon in his possession or whether he employed or displayed it, the trial court must instruct on the lesser included offense of second degree rape. *State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980). In this case, however, it is undisputed that the defendant had an open knife in his hand or lying in the open easily within his reach during all times pertinent to his act of sexual intercourse with the victim. Further, we con-

clude that the evidence in this case would not support a reasonable finding that the victim was not aware of the knife. The defendant's statement to Erwin only amounted to a description of how he employed or displayed the knife, not a denial that he had employed or displayed a knife. Therefore, he was not entitled to a jury instruction on the lesser included offense of second degree rape. This assignment of error is without merit and is overruled.

The defendant received a fair trial free from prejudicial error.

No error.