STATE OF NORTH CAROLINA v. ALVIN WESLEY WHITE

No. 9018SC471

(Filed 19 February 1991)

**1. Rape and Allied Offenses § 4.1 (NCI3d) — rape and first degree sexual offense — evidence of prior rape — admissible as to identity**

The trial court did not err in a prosecution for rape, first degree sexual offense, and robbery with a dangerous weapon by admitting evidence of a prior rape of another victim as evidence of identity where defendant remarked in his opening statement that the evidence would show that this was a case of mistaken identification and also indicated during cross-examination of the victim that he was establishing a defense of mistaken identification; the trial court's conclusion that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice was supported by the order in which defendant committed the various acts in each case, the manner in which he committed them, his order to both victims to "put it in," the duration of actual intercourse, defendant's preoccupation with removing his fingerprints in both cases, and the temporal proximity of the offenses; and, although defendant did not raise a constitutional issue of fairness at trial, the Supreme Court has held in *State v. Shamsid-Deen*, 324 N.C. 437, that such constitutional claims are the rationale behind N.C.G.S. § 8C-1, Rule 404, and that if the evidence is properly admitted under that rule, there has been no constitutional violation. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Rape § 71.**

Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.

2. **Rape and Allied Offenses § 6 (NCI3d) — rape and first degree sexual offense — use of deadly weapon — instructions**

The trial court did not err in a prosecution for rape and first degree sexual offense by instructing the jury that "a weapon has been employed within the meaning of the law when defendant has it in his possession at the time of the crime . . . ." As construed by the Supreme Court in *State v. Langford*, 319 N.C. 332, 340, a defendant has employed a knife as that term is used in N.C.G.S. § 14-27.2 when he possessed a knife during the commission of a rape. The Supreme Court did not create a presumption, but rather established a definition for a statutory term; furthermore, there was no error in the trial court's instruction as to either first degree rape or first degree sexual offense since the language regarding display or employment of a deadly weapon is identical in both statutes. N.C.G.S. § 14-27.4.

**Am Jur 2d, Rape §§ 2, 4.**

3. **Rape and Allied Offenses § 1 (NCI3d) — first degree sexual offense — analingus — elements of offense**

The trial court did not err by denying defendant's motion to dismiss a first degree sexual offense count based on analingus. A penetration by the penis is not an element of analingus, and analingus does not require penetration by the tongue, but requires only the stimulation of the anal opening by the tongue or lips. N.C.G.S. § 14-27.1(4).

**Am Jur 2d, Sodomy § 23.**

Judge PHILLIPS concurs in the result only.

APPEAL by defendant from judgments entered 30 November 1989 in GUILFORD County Superior Court by *Judge Thomas W. Ross*. Heard in the Court of Appeals 14 November 1990.

*Lacy H. Thornburg, Attorney General, by John F. Maddrey, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

GREENE, Judge.

Defendant was indicted on 7 August 1989 for one count of rape, one count of robbery with a dangerous weapon, and two counts of first-degree sex offense. Trial before a jury was held 27 November 1989, and defendant was found guilty of all charges. Defendant appeals from judgments entered 30 November 1989, sentencing him to a life sentence for the two sex offenses, a concurrent life sentence for rape, and a consecutive forty-year sentence for armed robbery.

The State's evidence introduced at trial tends to show that the victim in this case, Ms. Byrd, was alone in her apartment on 6 July 1989. At approximately 3:30 p.m. there was a knock at her door. At her door, she found an individual she identified at trial as the defendant.

The victim testified that the defendant represented himself as a person who had been assigned to inspect a recent repainting of the victim's apartment. Defendant went from room to room in the apartment, followed by the victim, allegedly to inspect the paint. When they reached the bathroom, the defendant closed the door and told the victim to remove her clothes. The victim told defendant to stop playing, and he told her that he wasn't playing and that if she didn't take her clothes off he would kill her. At the same time, defendant was unzipping his pants. Defendant then produced a brown-handled steak knife from his pocket. The victim tried to get by defendant and he put the knife to her neck and told her to shut up. The victim screamed, and defendant put down the knife. He placed his right hand over the victim's mouth and nose, and put his left arm around her neck. Unable to breathe, the victim lost consciousness.

When the victim regained consciousness, she was on her knees at the bathtub. She noticed that her clothes were partially unbuttoned. Defendant again told her to take off her clothes. He then grabbed the victim's clothes and pulled her up from the floor. Defendant then dragged the victim through the apartment, closing and locking the doors. The victim was held facing away from the defendant during this time, and each time she tried to look at him he struck her.

After locking the back and front doors to the apartment, defendant dragged the victim back to one of the bedrooms, again

instructing her to take off her clothes. When the victim refused, defendant removed the victim's clothes himself. During this time, the victim began struggling with defendant again. Defendant knocked her to her knees and again told her to shut up. The victim began to get up and defendant told her to stay on her knees. Defendant then "told me to feel him, and I wouldn't feel him." The victim tried to look at the defendant and he told her to turn around and to not look at him. Defendant had by this time unzipped his pants again and pulled them down, "and then he told me to put it in." The victim refused and again tried to look at the defendant. Defendant then struck the victim in the back of the head. They began struggling, the victim trying to get up and the defendant trying to keep her on her knees. The victim stopped fighting back, "and he told me to suck his dick." The victim refused and the defendant "started having oral sex with me from the back, because I was on my knees." The defendant "licked my rectum, my anus, and then went down to my vagina." The victim then noticed a dumbbell on the floor nearby, and was able to gain control of it. Defendant noticed this move and said, "Bitch, you think you're smart. I ought to kill you right now." Defendant then struck the victim in her head and back. He again placed the knife to the victim's neck and began dragging her down the hall to another bedroom.

As they entered the second bedroom, defendant closed the door and tried to get the victim on her knees again. She refused, and the defendant made the victim lie on the floor on her back. The defendant again had oral sex with the victim. He then raped the victim, and had intercourse for a period of approximately two minutes.

Afterward, defendant went to the victim's dresser there in the bedroom and removed a number of pieces of jewelry. Defendant then forced the victim to walk with him back through the apartment. The victim's purse was on the sofa, and the defendant removed the victim's cash from the purse. He then told the victim he wanted a drink of water. They went into the kitchen and the victim put some ice and water into a glass and tried to hand it to the defendant. Defendant said, "No, you hold the glass." When the victim refused, defendant took a dishtowel from the handle of the refrigerator, placed it around the glass, then drank the water. After drinking the water, he took the towel from around

the glass and walked to the front door and wiped the doorknob with the towel. He did the same to the back door, then left.

On cross-examination of the victim, the defendant elicited the following:

Q And your assailant, you said, you testified was behind you most of the time, correct?

A Yes.

Q And you said the person told you not to look at you (sic), correct?

A Right.

Q So you didn't look at the person did you?

A No, not when the act was taking place.

Q And once you say you were assaulted, you were highly upset, correct?

A Yes.

Q And you were under a lot of stress, right?

A Yes.

The State offered the testimony of a witness, Ms. Coleman, who would testify that the defendant had raped her on 3 July 1989. Upon objection to this evidence by defendant, the State argued the evidence was admissible under Rule 404(b) of the North Carolina Rules of Evidence as proof of identity, *modus operandi*, and intent. After a *voir dire* examination, the trial court announced in open court its findings of fact and conclusions of law. The court ordered the evidence was admissible to prove identity under Rule 404(b), and that the evidence was also admissible under the balancing test of Rule 403. Ms. Coleman was allowed to testify.

Ms. Coleman testified that she was working alone in the basement of a college library on 3 July 1989 when, at approximately 3:00 p.m., she heard a loud thump. She looked up toward the door to her office and saw a man running into the office. She identified this man as the defendant at trial.

Ms. Coleman testified that she jumped up from her desk and started running and screaming. The defendant caught her, and, while standing behind her, put a hand over her mouth and his

other arm around her chest and neck. When Ms. Coleman attempted to scream, the defendant told her to "shut up" and said, "See, I have this knife. I don't want to hurt you." The defendant then ordered Ms. Coleman to get on the floor, face down. He then sat on top of her and after a couple of minutes he said, "Take off your panties and your stockings." When Ms. Coleman made no effort to comply, the defendant began removing her clothes. The defendant then sat on top of her again, and "less than a minute later, I felt him trying to penetrate me anally." When he was unsuccessful, the defendant ordered Ms. Coleman to get on her knees and perform fellatio on the defendant. He then "took my hand and put it around his penis and put it in my mouth." After a few seconds, the defendant told Ms. Coleman to get back on the floor face down. He made another unsuccessful attempt at penetration, then said, "Turn over on your back." When Ms. Coleman turned over, the defendant said, "And you put it in." He then "took my hand and put it around his penis and he told me, 'You put it in.'" Ms. Coleman complied, and defendant "moved around on top of me for a minute or so." Then the defendant said, "I don't want anything to go in you, so I'm going to get up now." The defendant got up, pulled up his pants, picked up his knife from the floor, and told Ms. Coleman to put her clothes back on. The defendant, referring to a bag on the floor beside Ms. Coleman's desk, asked her if the bag was hers. She said that it was and the defendant began searching through it. He asked Ms. Coleman where her money was and she told him she didn't have any. The defendant then produced a piece of cloth, from somewhere, and wiped off the bag. He again asked Ms. Coleman where she kept her money and she pointed to her pocketbook on the other side of the room. The defendant searched the pocketbook and did not find any money. He then said, "Give me your rings." Ms. Coleman gave her rings to the defendant, then "he again wiped off my bag, and he was just wiping off anything—apparently anything that looked like he touched." He made Ms. Coleman escort him to the door to the office and said, "Don't do anything. I don't want to blow my way out of here." He then left.

At the close of the State's case, the defendant's motion to dismiss all charges was denied. No evidence was offered by the defendant.

The charge of sex offense and rape, both in the first degree, went to the jury on the theory that the defendant had employed

or displayed a deadly weapon. In its instructions to the jury, the trial court stated:

> The state must prove beyond a reasonable doubt that the defendant employed or displayed a dangerous or deadly weapon, in that connection, with respect to the employment and/or display of a deadly weapon, I instruct you that the law does not require a showing that the dangerous or deadly weapon was used in a particular manner in order to sustain a conviction for first degree rape. Further, I instruct you that a weapon has been employed within the meaning of the law when the defendant has it in his possession at the time of the crime. . . .

The issues are: (I) whether the trial court erred in admitting the evidence of defendant's prior act of sexual misconduct; (II) whether the trial court committed plain error in its instruction to the jury regarding the use or employment of a deadly weapon for purposes of first-degree sex offense and first-degree rape; and (III) whether the trial court erred in denying defendant's motion to dismiss one count of sex offense due to insufficient evidence.

I

[1] After a *voir dire* examination of Ms. Coleman, the trial court found sufficient similarities between the events concerning her and those concerning Ms. Byrd in the present case to allow Ms. Coleman's testimony under Rule 404(b) of the North Carolina Rules of Evidence as evidence of the defendant's identity, a material fact in issue. Defendant first argues this admission was made in error.

Rule 404(b)

Rule 404(b) provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.R. Evid. 404(b) (1988).

The preliminary issue to be addressed by the trial court when determining the admissibility of evidence under Rule 404(b) is whether the evidence is in fact being offered pursuant to that rule. *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986). Here, the State was clear in informing the trial court that Ms. Coleman's testimony was being offered pursuant to Rule 404(b). Specifically, the State offered during the direct examination of Ms. Coleman extrinsic evidence of prior conduct of the defendant to prove identity, *modus operandi*, and intent. Thus, the trial court properly concluded the admissibility of the evidence was to be analyzed initially under Rule 404(b).

After determining the evidence is offered pursuant to Rule 404(b), the court must then determine the relevancy of the evidence, if any. *Morgan* at 637, 340 S.E.2d at 91. Extrinsic evidence of conduct is admissible under Rule 404(b) so long as it is relevant for a purpose other than to show the defendant has the propensity to engage in the type of conduct charged. *Id.*

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

N.C.R. Evid. 401 (1988).

Here, the trial court admitted the evidence as proof of identity of the perpetrator. When evidence reasonably tends to prove a material fact in issue in the crime charged, it will not be rejected merely because it also proves defendant guilty of another crime. *State v. Jeter*, 326 N.C. 457, 389 S.E.2d 805 (1990). "In a criminal case, the identity of the perpetrator of the crime charged is always a material fact." *Jeter* at 458, 389 S.E.2d at 806; *State v. Johnson*, 317 N.C. 417, 425, 347 S.E.2d 7, 12 (1990). However, identity is not always in issue. *Johnson* at 425, 347 S.E.2d at 12. Therefore, before identity evidence is admissible under Rule 404(b), there must be a determination of whether the identity of the perpetrator is at issue. *See State v. Bagley*, 321 N.C. 201, 362 S.E.2d 244 (1987), *cert. denied, Bagley v. North Carolina*, 485 U.S. 1036, 108 S. Ct. 1598 (1988) (evidence of subsequent offense not admissible to prove identity where identity is not at issue); *State v. Thomas*, 310 N.C. 369, 312 S.E.2d 458 (1984) (identity put in issue, as required, where defendant relied upon alibi defense); *State v. McKoy*, 78 N.C. App. 531, 337 S.E.2d 666 (1985), *rev'd on other grounds*, 317 N.C. 519,

347 S.E.2d 374 (1986) ("issue on which the evidence of other crimes is said to bear should be subject of genuine controversy"); *Lovely v. U.S.*, 169 F.2d 386 (4th Cir. 1948) (evidence of another rape not admissible where defendant admitted intercourse and based defense solely on consent); Weinstein's Evidence § 404[15] ("[i]f there is no issue as to defendant's identity because defendant admits committing the act, then the other crime evidence should not be admissible on this theory").

Though Ms. Byrd positively identified the defendant as the perpetrator at trial, the defendant, in his opening statement, remarked that "the evidence will show that this is a case of mistaken identification." This remark is sufficient to make identity a material fact in issue, which meets the relevancy requirements of Rule 404(b). *See* Weinstein's Evidence § 404[09] ("[c]ertainly, where it is apparent, e.g. from the opening statement . . . that a certain consequential fact will be in issue, the appellate courts have refused to find error in the admission of other crimes evidence as part of the government's direct case"). Furthermore, the defendant's cross-examination of the victim regarding the fact the defendant was behind the victim most of the time during the commission of the offenses, and regarding the fact the victim was upset and under stress, also indicate the defendant was establishing a defense of mistaken identification. Thus, based on defendant's theory of defense, as manifested at trial by defendant's opening statement and cross-examination of Ms. Byrd, the identity of the perpetrator was at the heart of this case. Ms. Coleman's testimony therefore qualifies under Rule 404(b) since it is relevant to a material fact in issue. *See State v. Freeman*, 303 N.C. 299, 302, 278 S.E.2d 207, 208-09 (1981) (though victim identified defendant at trial, defendant's alibi defense made identity principal issue of case).

## Rule 403

After establishing identity is in issue, and therefore relevant under Rule 404(b), the determinative question is whether the evidence meets the mandate of Rule 403. *State v. Davis*, 101 N.C. App. 12, 398 S.E.2d 645 (1990). In part, Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . .

N.C.R. Evid. 403 (1988). The defendant argues that the slight probative value of the evidence in this case is substantially outweighed by the unfair prejudice to the defendant.

The question of whether evidence is to be excluded under Rule 403 is a matter left to the sound discretion of the trial court. *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990). "When the incidents are offered for a proper purpose, the ultimate test of admissibility is 'whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403.'" *State v. Pruitt*, 94 N.C. App. 261, 266, 380 S.E.2d 383, 385, *disc. rev. denied*, 325 N.C. 435, 384 S.E.2d 545 (1989) (quoting *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988)). *See also State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987); *State v. Davis*, 101 N.C. App. 12, 398 S.E.2d 645 (1990); *State v. Faircloth*, 99 N.C. App. 685, 394 S.E.2d 198 (1990).

Here, in both offenses the act was committed in the early afternoon, between 3:00 and 4:00 p.m. The victims were found alone in both instances. The defendant held both victims in the same manner, with one hand over the mouth and nose and the other arm over the chest and neck. The defendant repeatedly told both victims to "shut up." Both victims were threatened with a knife. In both instances, the defendant ordered the victim to remove her clothes, and then the defendant removed them when the victim refused to do so. The defendant told both victims to not look at him. The defendant directed both victims to get on their knees facing away from the defendant, and he attempted to penetrate each from a position behind the victim. Immediately after the defendant was unsuccessful in his attempt at penetration, he successfully forced one victim to perform fellatio, and unsuccessfully ordered the other victim to do the same. The defendant ultimately positioned both victims on their back. He ordered both victims to "put it in." The actual intercourse in both instances lasted under two minutes. In both offenses, the defendant searched the victim's pocketbook for cash afterward. He took jewelry from both victims. In both instances, the defendant used a cloth to wipe away any fingerprints he may have left. Finally, both offenses occurred in the city of Greensboro within a three-day period.

The order in which the defendant committed the various acts in each case, the manner in which he committed them, and, par-

ticularly, his order to both victims to "put it in," the duration of actual intercourse, defendant's preoccupation with removing his fingerprints in both cases, and the temporal proximity of the offenses all support the trial court's conclusion that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the defendant. Therefore, the evidence was properly admitted under Rule 403.

Finally, the defendant argues that even if the evidence is admissible under Rules 404(b) and 403, it rendered defendant's trial fundamentally unfair in violation of his state and federal due process rights. We first note that we do not find from the record that the defendant presented this constitutionally based argument at trial. Therefore, the issue may not be raised on appeal. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988). *See also State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal"). In any event, our Supreme Court has held that such constitutional claims are the rationale behind Rule 404, and that if the evidence is properly admitted under it, there has been no constitutional violation. *State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989).

II·

[2] The defendant next argues that the trial court erred in its jury instructions regarding the employment or display of a deadly weapon as it pertains to the offenses of first-degree rape and first-degree sex offense.

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . . .

(2) With another person by force and against the will of the other person, and:

a. *Employs* or displays a dangerous or deadly weapon. . . .

N.C.G.S. § 14-27.2(a)(2)a (1986) (emphasis added).

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

. . . .

> (2) With another person by force and against the will of the other person, and:
>
> > a. *Employs* or displays a dangerous or deadly weapon. . . .

N.C.G.S. § 14-27.4(a)(2)a (1986) (emphasis added).

Specifically, the defendant contends the erroneous portion of the instruction provided that "a weapon has been employed within the meaning of the law when the defendant has it in his possession at the time of the crime . . . ." Defendant contends this instruction reduced the State's burden of proof, and therefore violated his state and federal due process rights, because it created a mandatory conclusive presumption such that if the jury found that defendant possessed a weapon, it must conclude that the weapon was used or employed, an element necessary to prove the offenses. We disagree.

Our Supreme Court has held as follows:

> The statute, N.C.G.S. § 14-27.2, does not require a showing that a dangerous or deadly weapon was used in a particular manner in order to sustain a conviction for first degree rape. Instead it requires a showing only that such a weapon was "employed or displayed." Further, such a weapon has been "employed" within the meaning of N.C.G.S. § 14-27.2 when the defendant has it in his possession at the time of the rape.

*State v. Langford*, 319 N.C. 332, 344, 354 S.E.2d 525-26 (1987) (citations omitted).

Under N.C.G.S. § 14-27.2, as it has been construed by the Supreme Court, when a defendant possesses a knife during the commission of a rape, he has "employed" the knife as that term is used in the statute. The Supreme Court did not create a presumption, but rather established a definition for a statutory term. Furthermore, since the language regarding the employment or display of a deadly weapon during the commission of first-degree sex offense under N.C.G.S. § 14-27.4 is identical to the same language in N.C.G.S. § 14-27.2, pertaining to first-degree rape, we find no error in the trial court's instruction as to either offense.

### III

[3]   Defendant finally argues the trial court erred in denying his motion to dismiss the count of first-degree sex offense based on the commission of analingus. One of the elements of first-degree sex offense is that the defendant engage in a "sexual act." N.C.G.S. § 14-27.4 (1986). A "sexual act" is defined as "cunnilingus, fellatio, analingus, or anal intercourse . . . [or] the penetration, however slight, by any object into the genital or anal opening of another person's body. . . ." N.C.G.S. § 14-27.1(4) (1986). Defendant notes that analingus is not defined by statute and argues that the offense requires evidence of penetration, which was not established by the State at trial. Defendant is not clear in his argument as to whether he contends that analingus requires penetration by the penis or by the tongue.

In interpreting and construing statutes the Court must seek the legislative intent behind the statute. *State v. Lucas*, 302 N.C. 342, 275 S.E.2d 433 (1981). The legislature is presumed to have intended a purpose for each sentence and word in a particular statute, and a statute is not to be construed in a way which makes any portion of it ineffective or redundant. *State v. Williams*, 286 N.C. 422, 212 S.E.2d 113 (1975).

The term "anal intercourse," as it is used in N.C.G.S. § 14-27.1(4), has been construed as requiring "penetration of the anal opening of the victim by the penis of the male." *State v. DeLeonardo*, 315 N.C. 762, 764, 340 S.E.2d 350, 353 (1986). To require the same for "analingus" would make that term ineffective and redundant within the statutory scheme of N.C.G.S. § 14-27.1(4). We determine that penetration by the penis is not an element of "analingus."

In *State v. Ludlum*, 303 N.C. 666, 672, 281 S.E.2d 159, 162 (1981), our Supreme Court noted that N.C.G.S. § 14-27.1(4) also includes as a sexual act "the penetration, however slight, by any object into the genital or anal opening. . . ." The Court then stated:

If the legislature intended cunnilingus to require penetration by the lips or tongue, then its inclusion in the statute as a form of sexual act would have been superfluous because, the lips or tongue being themselves objects, the act would have been prohibited under the clause dealing specifically with penetrations.

*Id.* The Court concluded that the legislature intended cunnilingus to mean "stimulation by the tongue or lips of any part of a woman's genitalia." *Id.*

We find the *Ludlum* Court's analysis applicable to "analingus" as well because the portion of N.C.G.S. § 14-27.1(4) relied upon by the Court includes "the penetration . . . by any object into the . . . anal opening . . . ." Accordingly, "analingus" does not require penetration by the tongue, but requires only the stimulation of the anal opening by the tongue or lips.

The trial court therefore properly denied the defendant's motion to dismiss the count of first-degree sexual offense based on the commission of analingus.

No error.

Judge ORR concurs.

Judge PHILLIPS concurs in the result only.