IN RE AUTRY

[115 N.C. App. 263 (1994)]

## VI.

═══════════

IN THE MATTER OF: DYLAN AUTRY

No. 935DC920

(Filed 21 June 1994)

**Infants or Minors § 31 (NCI4th)— Willie M. child—treatment plan ordered by court—jurisdiction**

The district court exceeded its authority in vesting legal and physical custody of Dylan Autry, a Willie M. class member, with the Division of Mental Health, Developmental Disabilities and Substance Abuse Services within the Department of Human Resources, and by directing the Division to provide a plan and implementation for Dylan, because the federal district court has continuing jurisdiction over the question of appropriate treatment of Willie M. children and because of the role of the Review Panel in evaluating the compliance of the State with the consent order.

**Am Jur 2d, Infants §§ 33-41.**

**IN RE AUTRY**

[115 N.C. App. 263 (1994)]

Judge JOHN dissenting.

Appeal by the State from order entered 18 March 1993 by Judge Elton G. Tucker in New Hanover County District Court. Heard in the Court of Appeals 9 May 1994.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Michelle B. McPherson, for the State-appellant.*

*William Norton Mason, attorney for the guardian ad litem-appellee.*

JOHNSON, Judge.

Dylan Autry, born 25 September 1977, was adjudicated a dependent juvenile by the New Hanover District Court and legal custody of Dylan was granted to the New Hanover County Department of Social Services on 5 August 1986. Dylan suffers from serious behavioral and emotional problems and from developmental disabilities. Because of these problems, Dylan requires specialized services; Dylan was certified a Willie M. class member on or about 4 March 1987.

The Willie M. Services Section of the Division of Mental Health, Developmental Disabilities and Substance Abuse Services is within the North Carolina Department of Human Resources. The Division is responsible for creating, overseeing and funding all services for Willie M. class members, except educational services provided through the North Carolina Department of Public Instruction.

Judge Napoleon B. Barefoot, Jr. reviewed Dylan Autry's case during the 18 February 1993 session of New Hanover County District Court upon the motion of the guardian ad litem. The guardian ad litem was seeking an order from the court directing the North Carolina Department of Human Resources, through the Division, to develop a treatment/placement plan for Dylan and a specific time frame for implementing the plan. Those present at the hearing included Dylan's social worker, counsel for the New Hanover County Department of Social Services, the guardian ad litem represented by counsel, and Dylan's Willie M. case manager, Tommy Puckett. (Mr. Puckett is not an employee of the Division; he is employed by Southeastern Mental Health Center. The Center is operated by the Southeastern Area Mental Health, Developmental Disabilities and Substance Abuse Services Area Program. This Program is responsible for providing for the mental health, developmental disabilities

IN RE AUTRY

[115 N.C. App. 263 (1994)]

and substance abuse services needs of clients in its area. Dylan is one of its clients.)

The evidence at the hearing revealed that Dylan was a patient at the Children's Unit of Cherry Hospital in Goldsboro, North Carolina, and had been a patient there since January 1992. Cherry Hospital is a psychiatric facility operated by the North Carolina Department of Human Resources. Dylan was admitted to the hospital for assessment of his need for medication to address his behavioral problems. During his stay at Cherry Hospital, Dylan was provided treatment for behavioral problems caused by his developmental and emotional deficits. At the time of the hearing, Dylan was no longer in need of acute care and was ready for discharge to an appropriate long-term placement.

The social worker for the Cherry Hospital Children's Unit testified that she had been working closely with Mr. Puckett, who was trying to find an appropriate placement for Dylan so that he could be discharged from the hospital. Mr. Puckett testified that he was working with all of the agencies involved in Dylan's case to create a plan and submit it to the Division for consideration by the Division's Willie M. Services Section from whom the funding for the plan was being sought. However, because of Dylan's special needs, the plans he had submitted had not been accepted by the Division. One reason for the rejections was that the type of services proposed in the plans did not exist and would have to be developed. Mr. Puckett testified that two other plans that would have suited Dylan's needs called for individual residential treatment. These involved providing Dylan with a small house or an apartment with a 24-hour staff to supervise him. The cost associated with each of these plans was about $140,000 per year. Those plans were rejected by the Division but Mr. Puckett did not testify as to the reason for the rejection.

Because the Division wanted to ensure that Dylan did not continue to languish in the hospital, Mr. Puckett was instructed to develop a plan and coordinate the activities necessary to place Dylan in a "professional parenting home" as an interim placement. This would involve locating and training a couple with whom Dylan would live. The couple would be provided certain supports to ensure that Dylan's needs were met.

At the conclusion of the evidence, the trial court found that officials recommended that a plan be established for Dylan including the following criteria:

(1) That he be placed in an individual therapeutic residential center outside Cherry Hospital.

(2) That he needs to be taught in this facility life skills.

(3) That he needs an individualized education plan.

(4) That he needs speech therapy for his speech impediment which is stuttering when he is under stress.

(5) That he needs continued monitoring of the drugs he is being administered for his behavior.

Judge Barefoot then ordered the Willie M. program to provide to the court within thirty days a plan for placement that would meet Dylan's needs and ordered that an appropriate placement be implemented within sixty days. The matter was to come before the court for review within thirty days. Subsequently, on 5 March 1993, a written order was entered *nunc pro tunc* for 18 February 1993.

On 18 March 1993, Judge Elton G. Tucker presided over the review, finding "[t]hat Tommy Puckett, Willie M case manager, testified before this Court that there are plans for placement as ordered but that no firm plan or date for implementation of a plan can be given, although it is hoped that the plan will be implemented within the next several weeks." Judge Tucker concluded "[t]hat no firm plan has been presented to the Court with an implementation date as previously ordered" and "[t]hat it is in the present best interest of the juvenile that his legal and physical custody be granted to the Willie M. Program, a Division of the North Carolina Department of Human Resources." The order required two employees of the Division, Marci White, Director of the Section, and Pat Ray, Regional Service Manager, to appear before the court on 22 April 1993, and to show the court that Dylan had been placed in accordance with Judge Barefoot's findings of fact regarding Dylan's needs, or to show cause why they should not be held in contempt for failure to abide by the court's order.

On 31 March 1993, the Division asked that Judge Tucker modify or vacate his order or, in the alternative, stay his order pending appeal. Judge Tucker denied these requests. On 13 April 1993, the Division petitioned our Court to issue writs of prohibition and supersedeas and moved for a temporary stay of the order. These writs (the petition for a writ of prohibition was treated as a petition for writ of

certiorari) were granted by our Court on 4 May 1993. We turn now to the merits of this appeal.

The State first argues the district court lacked jurisdiction to order the Division to implement a specific treatment program for Dylan Autry. Specifically, the State argues that because the Division was not a party to this juvenile proceeding, the district court was without authority to direct the Division to take any particular action with respect to the juvenile.

The State cites *In the Matter of Baxley*, 74 N.C. App. 527, 328 S.E.2d 831, *disc. review denied*, 314 N.C. 330, 333 S.E.2d 483 (1985), where our Court stated:

> We agree that, as a certified Willie M. child, respondent has certain special constitutional rights to appropriate treatment by the State of North Carolina. These were established in the consent order in *Willie M. v. James B. Hunt*, No. CC79-0294 slip op. (W.D.N.C. 20 February 1981). Yet, the stipulations by the parties in that case, as adopted by the federal district court in its order, indicate that a Review Panel was established by the court and "shall be responsible to the Court and is created for the purpose of reviewing defendants' compliance with the decree entered in this action." This Review Panel has the duty of reviewing the services actually being provided for each Willie M. child and of determining whether they assure the child the rights he is accorded under the court's decree.
>
> Given the federal district court's continuing jurisdiction over the question of appropriate treatment of Willie M. children, and the role of the Review Panel in evaluating the compliance of the State of North Carolina with the consent order, which was agreed to by the parties, we believe it would be inappropriate for this tribunal to inquire into whether the respondent in the present case was denied his Willie M. rights when the juvenile judge revoked his conditional release.

*In the Matter of Baxley*, 74 N.C. App. at 531, 328 S.E.2d at 833.

Further, the State cites *In re Swindell*, 326 N.C. 473, 390 S.E.2d 134 (1990), where our Supreme Court held that the trial court "exceeded the scope of its authority in ordering the State of North Carolina to develop and implement a specified adolescent sex offender treatment program." The Court stated that "[t]he North Carolina Juvenile Code, N.C.G.S. § 7A-516 to § 7A-744, does not grant the

district courts the authority to order the state, through the Division of Youth Services, to develop and implement specific treatment programs and facilities for juveniles." *Swindell*, 326 N.C. at 475, 390 S.E.2d at 136.

We also note that there is no authorization in our statutes to grant legal and physical custody of a juvenile to the Willie M. Services Section of the Division, although the guardian ad litem argues that the Division of Youth Services, also a Division of the Department of Human Resources, is a "person" within the purview of North Carolina General Statutes § 7A-647 (Cum. Supp. 1993), as held in *In re Doe*, 329 N.C. 743, 407 S.E.2d 798 (1991). *Doe* distinguishes *Swindell* at 329 N.C. 750-51, 390 S.E.2d 802-03.

Based on the aforementioned holdings and reasoning, we agree with the State in the case *sub judice*. Like the Court in *Baxley*, because the federal district court has continuing jurisdiction over the question of appropriate treatment of Willie M. children, and because of the role of the Review Panel in evaluating the compliance of the State of North Carolina with the consent order which was agreed to by the parties, we believe that the district court judge exceeded his scope of authority in vesting legal and physical custody of Dylan with the Division, and by directing the Division to take any particular action with respect to Dylan, who had been certified a Willie M. class member. Therefore, we reverse the decision of the trial court.

Reversed.

Judge WELLS concurs.

Judge JOHN dissents.

Judge JOHN dissenting.

I believe Judge Tucker had authority both (1) to place legal and physical custody of Dylan Autry (Dylan) with the Willie M. Services Section, a Division of Mental Health, Developmental Disabilities and Substance Abuse Services within the North Carolina Department of Human Resources (the Section); and (2) to order the Section to arrange placement of Dylan in a living environment consistent with the criteria set forth in Judge Barefoot's earlier 18 February 1993 order.

The record reflects Dylan was adjudicated a dependent juvenile and custody was granted to the New Hanover County Department of Social Services on 5 August 1986. He was subsequently certified a Willie M. class member on or about 4 March 1987. The necessity for placement of Dylan at the conclusion of his stay in Cherry Hospital, a psychiatric facility operated by the Department of Human Resources, was known upon his hospital admission in early January, 1992. In July and October of 1992, two separate placement plans for Dylan were submitted to the Section, but were rejected.

The matter came on for review before Judge Barefoot in February of 1993. Cherry Hospital officials indicated Dylan had received and attained the maximum benefit from hospitalization and his condition was deteriorating as his discharge continued to be delayed. Judge Barefoot's order (entered 5 March 1993, *nunc pro tunc* to the hearing date of 18 February 1993) directed the Section to provide the court with a placement plan, incorporating certain criteria, within thirty (30) days.

Judge Tucker, when the matter came on for review 18 March 1993 (six years after Dylan's classification as a Willie M. juvenile, *fourteen months* after his placement at Cherry Hospital, and *one full month* after Judge Barefoot's directive), was confronted with lame excuses and vague reassurances that there were "plans for placement as [Judge Barefoot had] ordered but that no firm plan or date for implementation of a plan can be given, although it is hoped that the plan will be implemented within the next several weeks." In light of the foregoing history, Judge Tucker's apparent frustration with bureaucratic foot-dragging was quite understandable.

The appeal herein only presents questions as to whether Judge Tucker had authority: (1) to set custody of Dylan in the Section, and (2) to direct the custodian to effect treatment of Dylan consistent with Dylan's best interests. The State points to two decisions—*In re Swindell*, 326 N.C. 473, 390 S.E.2d 134 (1990) and *In the Matter of Baxley*, 74 N.C. App. 527, 328 S.E.2d 831, *disc. review denied*, 314 N.C. 330, 333 S.E.2d 483 (1985)—and argues that any cure for Dylan's predicament must be sought in federal court. I disagree and vote to affirm Judge Tucker's order.

I.

In my opinion, our Juvenile Code, N.C.G.S. §§ 7A-516 to -749 (1989), authorizes Judge Tucker's action.

*First,* under G.S. § 7A-523, the juvenile court has "exclusive, original jurisdiction" over a juvenile alleged to be dependent. Moreover, the Code provides this jurisdiction "*shall* continue until terminated by order of the court or until he reaches his eighteenth birthday." G.S. § 7A-524 (emphasis added). *See also In re Doe,* 329 N.C. 743, 748, 407 S.E.2d 798, 801 (1991). Nowhere within the statutory scheme is the court divested of its responsibility should a dependent juvenile subsequently be certified a Willie M. class member. Accordingly, Judge Tucker had jurisdiction over Dylan's case.

*Second,* the State's assertion the court's order was unauthorized because the Section was not a party is unavailing. Many alternative dispositions under the Juvenile Code involve implementation through third parties, usually state or local agencies, and the Section had full notice of Dylan's situation and of the district court's concern. No "fundamental fairness" or "due process" principles were violated by Judge Tucker's order. *See In re Jackson,* 84 N.C. App. 167, 171-72, 352 S.E.2d 449, 452-53 (1987).

*Third,* the Code provides that the court may set custody of a dependent juvenile with "a parent, relative, private agency offering placement services, or some other suitable person." G.S. § 7A-647(2)(b). Our Supreme Court has recently found that, as a matter of "common-sense," the Division of Youth Services (like the Section, a division of the Department of Human Resources) is a "person" within the purview of a different sub-section of this same statute. *In re Doe,* 329 N.C. at 750, 407 S.E.2d at 802 (construing G.S. § 7A-647(3)). I find no distinction between the Section and the Division of Youth Services for purposes of consideration as a "person" under the statute. Furthermore, I would hold the Section, as consisting of individuals well versed in the special needs of Willie M. children, to be a "suitable" person in which to place custody of Dylan.

*Fourth,* G.S. § 7A-647(3) specifically authorizes the juvenile court, if a dependent juvenile is in need of "psychiatric, psychological or other treatment," to "order the needed treatment." *See also Doe,* 329 N.C. at 750, 407 S.E.2d at 802.

*Lastly,* G.S. § 7A-657 mandates periodic review by the juvenile court of custody and treatment arrangements for dependent juveniles and authorizes "different placement as is deemed to be in the best interest of the juvenile." G.S. § 7A-657(d). This Code section permits the reviewing judge to order any treatment alternative authorized by G.S. § 7A-647. Within the limitations imposed by *Swindell*

discussed below, I believe these sections enabled Judge Tucker to order treatment compatible with the criteria set forth in Judge Barefoot's earlier order.

Despite the foregoing statutory provisions, the majority relies upon *Baxley* (and to a lesser extent, *Swindell*) to hold that because Dylan is a Willie M. child, Judge Tucker exceeded his authority. I disagree.

"The legislature is presumed to have intended a purpose for each sentence and word in a particular statute, and a statute is not to be construed in a way which makes any portion of it ineffective or redundant." *State v. White*, 101 N.C. App. 593, 605, 401 S.E.2d 106, 113, *disc. review denied* and *appeal dismissed*, 329 N.C. 275, 407 S.E.2d 852 (1991). My analysis of the Juvenile Code, summarized above, indicates the juvenile court is responsible for both the proper custody and the proper treatment of dependent juveniles such as Dylan—*regardless of whether they are subsequently determined to be Willie M. children.* The Juvenile Code makes no mention of Willie M. children. In the absence of a legislative exclusion for Willie M. children, I would hold that once a child is found to be dependent, the juvenile court's "exclusive, original jurisdiction" over custody and treatment matters continues until such time as jurisdiction is "terminated by order of the [juvenile] court" or such time as the child reaches age eighteen (18). In other words, I do not feel a dependent juvenile, who is subsequently determined to be a Willie M. child, should be allowed "to slip through the cracks" of our Juvenile Code.

## II.

I would further hold that neither *Baxley* nor *Swindell* operate to bar the trial court's action.

As previously noted, the Juvenile Code provides that the district court has "exclusive, original jurisdiction" over any case concerning a dependent child. G.S. § 7A-523. While the majority reads *Baxley* as imposing a limitation upon that jurisdiction, I find the holding therein inapposite. In *Baxley*, we were confronted with the question of whether the trial court denied a Willie·M. juvenile his federally mandated right to treatment by revoking the juvenile's conditional release from DYS custody. *Baxley*, 74 N.C. App. at 531, 328 S.E.2d at 833. Pursuant to the consent order in *Willie M. v. James B. Hunt*, No. CC79-0294 (W.D.N.C. 20 February 1981), Willie M. children have

"certain special constitutional rights to appropriate treatment . . . ."
*Baxley,* 74 N.C. App. at 531, 328 S.E.2d at 833.

Although *Baxley* indicates it is "inappropriate for this tribunal"
to inquire into whether the State has denied a Willie M. child those
rights guaranteed in the federal consent order, *Baxley,* 74 N.C. App.
at 531, 328 S.E.2d at 833, the issue herein does not concern a Willie
M. class member seeking redress for a violation of those rights
secured under the federal court decree. On the contrary, this case
involves the authority and responsibility of the district court to fulfill
its continuing statutory obligation concerning "dependent" juveniles.
*See* G.S. § 7A-657. It involves the juvenile court's repeated attempts to
find Dylan, who is a "dependent" child (and who also happens to be
a Willie M. child), a suitable custodian and living environment—mat-
ters within the court's jurisdiction which will repeatedly resurface
until effectively resolved. Contrary to the majority's implicit holding,
therefore, I do not believe the district court's "exclusive, original
jurisdiction" suddenly evaporates when a dependent youth acquires
a Willie M. classification.

Neither do I consider *In Re Swindell,* 326 N.C. 473, 390 S.E.2d
134 (1990) to have application. Under *Swindell,* the juvenile court
has no authority "to order the state . . . to develop and implement spe-
cific treatment programs and facilities for juveniles." *Swindell,* 326
N.C. at 475, 390 S.E.2d at 136. However, the court may order an
agency to provide specific treatment when such treatment is *cur-
rently available. Doe,* 329 N.C. at 752, 407 S.E.2d at 803. In summary,
the courts simply cannot order the *creation* of treatment programs
and facilities which do not exist. Such is not the situation in the case
*sub judice.*

There exists a strong presumption favoring correctness of deci-
sions of the trial court, with the burden on the appellant to show
error. *L. Harvey & Son Co. v. Jarman,* 76 N.C. App. 191, 195-96, 333
S.E.2d 47, 50 (1985). Here the State, as appellant, has failed to file a
transcript of the proceedings below. Consequently, our consideration
of the State's argument is limited to the printed record on appeal. *See
Loeb v. Loeb,* 72 N.C. App. 205, 218, 324 S.E.2d 33, 42 (an appellate
court's decision must rest on the record on appeal), *disc. review
denied,* 313 N.C. 508, 329 S.E.2d 393 (1985).

The limited appellate record prohibits any conclusion that the
five placement criteria, as established by Judge Barefoot and
directed by Judge Tucker, were non-existent on the date ordered. The

GARRITY v. MORRISVILLE ZONING BD. OF ADJUSTMENT

[115 N.C. App. 273 (1994)]

court's unchallenged, and therefore binding, findings, *see Hagan v. Peden Steel Co.*, 57 N.C. App. 363, 365, 291 S.E.2d 308, 309 (1982), on the contrary indicate that plans for Dylan's placement were indeed available, but would require several additional weeks for implementation. Hence the State (as appellant) has failed to show the placement and treatment ordered were unavailable, and therefore the trial court's order is not barred by application of *Swindell.*

For the foregoing reasons, I respectfully dissent.